THE WESLEYAN SEMINARY at Albion *vs.* MAXWELL M. FISHER.

The plaintiffs, an incorporated literary institution, upon the strength of subscriptions to its fund, erected buildings and expended a large sum in furtherance of the objects of its contributors; after which, a subscriber for $100 paid that sum by his promissory note, and received the following certificate, signed by the President, Secretary, and Agent of the Institution:

"KNOW ALL MEN BY THESE PRESENTS, That this certificate entitles of                      his heirs, descendants, and assigns, to one hundred dollars stock in the Wesleyan Seminary at Albion, Michigan, and the Albion Female Collegiate Institute.

"This certificate further entitles the said                      his heirs, descendants, and assigns, to the free tuition, forever, of one student in the solid branches of instruction in the said Seminary, or Female Collegiate Institute, as aforesaid: *Provided*, That when the payment of one hundred dollars is endorsed hereon, by any authorized agent of the Trustees, this certificate shall be available, and not before.

"Witness our hands and the corporate seal, this sixth day of June, 1849."

*Held*, that here was a good and sufficient consideration for the note.

The word "stock," in the subscription and said certificate, is employed in a special sense, to denote an interest, or membership, in the Corporation, entitling the holder to a voice in its management, and is entirely different from a moneyed interest, upon which the subscriber might be liable to assessment, or entitled to dividends.

If one or more of several considerations, which are the ground of a promise, are only frivolous and insufficient, but not illegal, and the others are good and sufficient, the former will be disregarded, and the good will sustain the promise.

Case reserved from Wayne Circuit.

This was an action of assumpsit, brought on a promissory note, of which the following is a copy :

"For value received, I promise to pay the Wesleyan Seminary, at Albion, or bearer, the sum of one hundred dollars, on or before the first day of January, 1855, with interest, to be paid annually at Albion, at ten per cent., after three years.

[Signed]             "M. M. FISHER. [L. s.]

" *Dated, October 20th*, 1851, *Detroit.*"

On the back of said note was endorsed :

" The interest may commence in three (3) years, or sooner, if the maker choose ; and he may then secure this and use his scholarship, by paying the interest, or he may pay one-fourth each year, and use his scholarship as if paid in full.

"[Signed]             " C. T. HINMAN, Agent.

" *October 28th*, 1851."

The case was tried before the Hon. Samuel T. Douglass, Circuit Judge, without a jury. And on the trial the Court found and returned the following facts: That the note was made and delivered by the defendant to the plaintiff, endorsed as set forth on the day of its date, and was given

in payment of a subscription of one hundred dollars to the endowment of the fund of the Wesleyan Seminary; that on the delivery of the note to plaintiffs, they delivered to defendant a certificate, in accordance with the terms of said subscription, to which a subscriber to the amount of one hundred dollars was entitled; that said subscription paper was, in part, in the following words:

*Know all men by these presents,* That we, the subscribers whose names are hereunto affixed, do agree and covenant with the Wesleyan Seminary at Albion, for ourselves, our heirs, Administrators, executors or assigns, to pay said Seminary, or their accredited agent, the sums affixed to our respective names, for the purpose, and on the conditions hereinafter named, viz.:

*First:* To form an endowment fund for the said Wesleyan Seminary at Albion, in the State of Michigan, and for such other purposes as are hereinafter specified.

*Second:* To form an endowment fund for a Female College, or Graduating Course for Young Ladies, as a branch of said Seminary, as hereinafter specified, under the style and title of the Albion Female Collegiate Institute.

The conditions of this instrument are such, that no subscription, note or pledge shall be collectable, unless at least forty thousand dollars shall be secured on scholarships (to be hereinafter described), or in some way donated or pledged to the said Seminary, on or before the thirty-first day of December, 1851.

As soon as the said forty thousand dollars shall be known to have been raised as above, the Trustees of said Seminary shall publish, or cause to be published, in three papers of this State, for three successive weeks, that the said forty thousand dollars are pledged, whereupon said subscription notes or pledges shall be due and collectable; said notes or subscriptions shall then be paid, or satisfactorily secured at ten per cent. And in case said notes or subscriptions are

not paid or secured as above, within one year from the time of said notification, payment having been previously demanded by an authorized agent, the scholarships hereinafter named shall be forfeited, but the subscriptions or notes shall be holden as donations to this Institution.

The Trustees of said Seminary shall establish or cause to be established, as a branch of said Seminary, either by procuring a new charter from the Legislature of this State, or by an enlargement of the present charter, or under their existing charter, as may be deemed by them best and most convenient, a Female Collegiate Institute of a high grade; or Graduating Course for young ladies, which course shall at least be equal in extent to the graduating course published in the catalogue of said Wesleyan Seminary for 1847 and 1848." Said subscription paper provided for the funding of the amount subscribed, which need not be stated, and provided further, that each subscriber of twenty-five dollars, when that amount was paid, should receive a certificate entitling him, his heirs and descendants to twenty-five years free tuition for one student in the solid branches of instruction in the Seminary; each subscriber of fifty dollars should receive a certificate, on payment of his subscription, entitling him, his heirs and descendants to the like free tuition forever; and that each subscriber of one hundred dollars should receive a certificate entitling him, his heirs, descendants and assigns, to one hundred dollars *stock in said Seminary and Female Institute*, and his heirs, descendants and assigns to the free tuition forever, of one student in said branches at said Seminary and Institute.

Said subscription provided further as follows :

" Said stock shall be transferable and saleable in the market as any other stock : *Provided, nevertheless*, That no stock shall be alienated or withdrawn from the purposes of education as set forth in this instrument and the Seminary charter : *Provided, further*, That no stockholder shall be personally

liable for any debts now existing, or that may hereafter be contracted by the Trustees, or for any assessment on his stock for any purposes whatever. It is further understood and agreed, that, should the Trustees of the said Wesleyan Seminary apply the interest of said funded stock to other purposes than those hereinbefore specified, then, and in that case, each stockholder shall be entitled to a reversion in cash to himself, his heirs and assigns, of the whole amount of stock he may hold in the Institution."

The Court found that the sum of $40,000 and upwards was pledged to said Seminary on subscription, before the 19th day of March, 1851, and notice thereof duly published, and that $40,000 and upwards had been actually paid before the commencement of this suit; that a subscription of $100 made before defendant's subscription, was paid in cash after his subscription and before the giving of the note by him declared on in this suit. That plaintiffs have established a Female Collegiate Institute of a high grade, according to the obligations of the subscription, and that a building was erected for the same at an expense of $25,000, and the Institution had been maintained up to the present time, etc., and that the defendant never had any student in said Seminary or Institute.

The question whether, upon these facts, the plaintiffs were entitled to recover, was reserved for the opinion of this Court.

*H. K. Clarke*, for plaintiffs.

1. If there be such a consideration as the law holds to be valid, and which supports the whole note, the Court will not entertain any question as to adequacy or sufficiency of the consideration. (1 *Pars. on Cont.*, 361.)

There were four distinct considerations supporting the note. *First*, On the subscription alone, the $40,000 being shown to be subscribed and notice given, plaintiffs were entitled to

recover. (1 *Pars. on Cont.*, 377; *Linn Acad.* vs. *Davis*, 11 *Mass.*, 112; *Farm. Acad.* vs. *Allen*, 14 *Ib.*, 171; *Bridg. Acad.* vs. *Gilbert*, 2 *Pick.*, 579; *Tr. of Hanson* vs. *Stetson*, 5 *Ib.*, 506; *Bryant* vs. *Goodnow*, *Ib.*, 228; *Williams Col.* vs. *Danforth*, 12 *Ib.*, 541; *Thompson* vs. *Page*, 1 *Metc.*, 565; *Ives* vs. *Sterling*, 6 *Ib.*, 110; *Watkins* vs. *Eames*, 9 *Cush.*, 537; *George* vs. *Harris*, 4 *N. H.*, 533; *Cong. Soc. Troy* vs. *Perry*, 6 *Ib.*, 164; *Reg. Soc. of Whitestown* vs. *Stone*, 7 *Johns*, 112; *McCauly* vs. *Bellinger*, 20 *Ib.*, 89; *Stewart* vs. *Ham. Col.*, 2 *Denio.*, 403; *Barnes* vs. *Perine*, 9 *Barb. S. C.*, 202; *University of Vt.* vs. *Buell*, 2 *Verm.*, 48; *St. Treas.* vs. *Cross*, 9 *Ib.*, 289; *Macon* vs. *Sheppard*, 2 *Humph.*, 335; *Com.* vs. *Perry*, 5 *Ham.*, 58; *A. & A. on Corp.*, *p.* 191.)

The agreement to establish the Female Institute was another. (*Stewart* vs. *Ham, Col.*, 1 *Comst.*, 581; *Collier* vs. *Baptist Ed. Soc.*, 8 *B. Mon.*, 68.)

The agreement of plaintiffs to teach one student forever for defendant, was another.

And, finally, the undertaking to refund the subscription in case of division, such undertaking operating as a benefit to the defendant, and a detriment to plaintiffs. (*Thompson* vs. *Page*, 1 *Metc.*, 571; *Williams Col.* vs. *Danforth*, 12 *Pick.*, 541; 1 *Pars. on Cont.*, 372.)

2. A note given in payment of a voluntary subscription, after payment by co-subscribers, is such a confirmation of the sufficiency of the consideration as will be enforced by the Courts. (*Bowers* vs. *Hurd*, 10 *Mass.*, 427; *Salem M. D. Corp.* vs. *Ropes*, 6 *Pick.*, 26; *Trust. of Amherst Acad.* vs. *Cowles*, 6 *Pick.*, 427; *Cong. Soc. of Troy* vs. *Goddard*, 7 *N. H.*, 430; *Robertson* vs *March*, 3 *Scam.*, 198.)

3. The partial failure of the consideration of a promissory note is not admissible in evidence in an action on the note, unless there be fraud, illegality, or a breach of warranty.

There are some cases which deny that a *partial* failure of the consideration of a note, can be shown under any circum-

stances; but we believe there are none which deny the principle with the qualification we have stated. (*Moggridge* vs. *Jones*, 14 *East.*, 486; *Grant* vs. *Welchman*, 16 *Ib.*, 207; *Morgan* vs. *Richardson*, 1 *Camp.*, 40; *Solomon* vs. *Turner*, 2 *Eng. C. L.*, 30; *Obhard* vs. *Betham*, 22 *Ib.*, 569; *Burton* vs. *Stewart*, 3 *Wend.*, 236; *Harlan* vs. *Read*, 3 *Ham.*, 285; *Washburn* vs. *Priest*, 3 *Dev.*, 390; *Kernodle* vs. *Hunt*, 4 *Blackf.*, 57; *Stone* vs. *Peake*, 16 *Verm.*, 213; *Scudder* vs. *Andrews*, 2 *McLean*, 464; *Elminger* vs. *Drew*, 4 *Ib.*, 338; *Kinney* vs. *Turner*, 15 *Ill.*, 182.)

4. Where the consideration of a contract is made up of several undertakings, a defect or failure in any one of them untainted by fraud or illegality, will not avoid the contract, unless the deficiency be capable of definite computation. *Day* vs. *Nix*, 17 *E. C. L.*, 555; *Gascoigne* vs. *Smith*, *McC. & Y.*, 338; *Parish* vs. *Stone*, 14 *Pick.*, 198; *Pulsifer* vs. *Hotchkiss*, 12 *Conn.*, 234; *Stone* vs. *Peake*, 16 *Verm.*, 213; *Harlan* vs. *Read*, 3 *Ham.*, 285.)

5. If a partial failure or defect of consideration be asserted, the *onus* of establishing it, and of furnishing the measure by which to estimate it, is on the party who asserts it.

If the several undertakings which enter into the consideration in this suit be distinct in character, and capable of distinct valuation, these are facts, which the defendant must prove before he can avail himself of it as a defence. He must show affirmatively *the extent* of the deduction he claims. (*Parish* vs. *Stone*, 14 *Pick.*, 198.)

6. The defendant cannot rescind the contract contained in his subscription, because of a partial failure of the consideration; if, without objection on his part, the position of the parties has since been so changed that it cannot now be restored.

There is no proof that he desires to rescind the contract, unless it be his defence of this action. He still holds the certificate issued to him by the plaintiffs. It is "assignable

66

in the market." It entitles the holder of it to valuable privileges, and there has been no offer to return it. (*Hunt* vs. *Silk*, 5 *East.*, 449 ; *Burton* vs. *Stewart*, 3 *Wend.*, 236; *Boorman* vs. *Jenkins*, 12 *Ib.*, 560; *Connor* vs. *Henderson*, 15 *Mass.*, 319; *Coolidge* vs. *Bingham*, 1 *Metc.*, 547.)

*Burt & Maynard*, for defendant.

One of the principal considerations for the note, was the agreement of the Trustees of the Wesleyan Seminary to sell the defendant one hundred dollars' worth of joint stock in the said Seminary. The contract was entire on the part of the plaintiffs, although it consisted of wholly distinct and independent items on their part.

If the consideration to be paid is single and entire, the contract must be held to be entire, although the subject of the contract may consist of several distinct and wholly independent items. (*Parsons on Contracts*, vol. 2, *p.* 31; *Miner* vs. *Beadley*, 22 *Pick.*, 457.)

As the contract is entire on the part of the plaintiffs, the defendant has a right to rescind the contract, unless the plaintiffs can give him all they agreed to for the hundred dollars. The plaintiffs have not got any such thing as "joint stock," and consequently cannot convey any to the defendant, according to their agreement.

Where promissory notes sued on, and an agreement respecting them are executed at the same time between the same parties, about the same subject matter, they must be construed together, and considered as forming but one contract. (*Bailey* vs. *Cromwell*, 3 *Scam.*, 71; *Duncan* vs. *Charles*, 4 *Scam.*, 561; *Davis* vs. *McPicker*, 11 *Ill.*, 327.)

A promise is not a good consideration for a promise, unless there is an absolute mutuality of agreement, so that each party has the right at once to hold the other to a positive agreement, and can force the party to keep his promise by a

suit. (*Parsons on Cont.*, vol. 1, *pp.* 373, 374; 6 *Barn. & Cress.*, 255.)

If the plaintiffs' charter does not authorize them to hold and have "joint stock in the said Seminary," then they cannot contract in regard to joint stock, and their promise to sell the defendant joint stock and give him a certificate of stock, is not binding on them. No action can be maintained against them on such promise; consequently, there was not an absolute mutuality of agreement between the parties. Plaintiffs have no authority to deal in joint stock. The contract which the plaintiffs entered into with this defendant, was illegal, because they are not authorized by their charter to have or hold joint stock, or to issue certificates of stock, transferable and saleable in the market. If the contract is illegal, then no action can be maintained upon it, nor upon the note in this suit. (8 *Gill. & J.*, 249; 10 *Beavan*, 1; 2 *Doug.*, 253; 5 *Conn.*, 560; 11 *Ohio*, 12; 7 *Wend.*, 34.)

Whatever is stated in the subscription paper, which forms a part of this case, by the plaintiffs in regard to the joint stock in the Wesleyan Seminary at Albion, is a representation made by the plaintiffs to the defendant, to induce him to give the plaintiffs the one hundred dollars which they are now seeking to recover. Such representation is fraudulent and an imposition upon the defendant, and vitiates the whole contract.

By the Court, MARTIN, J.

The only defence interposed by Fisher to the plaintiffs' recovery in this action, is based upon the fact, that in the subcription paper which contained his original promise, and in satisfaction of which the note in question was given, the plaintiffs, on their part, undertook, among other things, to convey to the subcribers of one hundred dollars, stock in the Institution to an equal amount.

This undertaking, the defendant contends, is impossible to be performed, and is not binding upon the plaintiffs ; and he also contends that it is illegal, and that, upon both of these grounds, this action may be successfully defended.

The plaintiffs were an incorporated body at the time this subscription was made, and from the facts found by the Court below it appears, amongst other things, that, upon the strength of this and other subscriptions, they erected buildings, established a Female Collegiate Institute, employed teachers, and otherwise expended money, and incurred great expenses according to their undertakings in and for the purposes designed by the parties to the subscription paper, and, for aught that appears to the contrary, fully fulfilled every obligation assumed therein, and that all or most of this was done after the subscription, and before the giving of the note in question. Under such circumstances, no impeachment of the consideration, short of illegality or fraud, could be permitted consistently with good faith and sound morality, in an action founded upon the subscription itself. Any other rule would work gross injustice upon the plaintiffs, who have incurred expenses and assumed obligations on the faith of it, which require its fulfillment. But, when the defendant has gone a step further, and has satisfied his subscription by superadding his note, and has received the certificate agreed to be given by the plaintiffs, as well as induced those expenditures, by a much stronger reason should we hold, that unless fraud or illegality tainted the original consideration, he is estopped from denying the obligation arising from his own deliberate recognition of the validity of his primary undertaking, and we should not hesitate thus to hold, were we without authority upon this point. But this is not a new question. In Amherst Academy *vs.* Cowles (6 *Pick.*, 427), which is, in many respects, strikingly analogous to the present case, this precise principle was established. It is to be observed, however, that in that case the note in express terms

referred to the subscription, in addition to the words, " value received" for the consideration ; but we apprehend the reasoning of that case is equally applicable to this, in which the defendant asserts his subscription to be the consideration for his note. In pronouncing the judgment of the Court in that case, Parker, C. J., says : " Was there a consideration for this note? In one sense there was not; that is, the promissor had received nothing at the time from the payees, which was of any pecuniary value. But it is quite sufficient to create a consideration that the other party, the payee, should have assumed an obligation in consequence of having received the note, which he was compellable either at law or in equity to perform, unless the promissor should be able to show, when sued, that the payee had refused, or was unable, or had unreasonably neglected to perform the engagement on his part, in which case a defence might be raised, on the ground of a failure of consideration. The defence is not put upon that ground, and so it must be presumed that the corporate body to whom the promise is made, has applied its funds to the purposes for which they were raised, or is ready and willing to do it whenever the different contributors to it shall have performed their engagements. In a Court of Equity of general jurisdiction, they could be compelled to discharge their duty. * * *

"It certainly, then, would seem that every contributor to the funds of a Corporation authorized by law to receive moneys to apply them to improvement, in most essential points, of the community to which he belongs, had his recompense in his share of the public good resulting from them ; and, if by means of his contribution, or his solemn promise to pay, the body to whom he has pledged his word should encounter expenses, become under legal obligations, or otherwise pursue the intent of the Legislature in granting them the charter, this a sufficient legal consideration for the promise. In this respect, the principle of common honesty cannot be at vari-

ance with the law of the land." After a review of the various adjudications bearing upon the question, that Court concludes, that where there are proper parties to the contract, and the promisee is capable in law of carrying into effect the purpose for which the promise is made, and is, in fact, amenable to law for neglect or abuse of his trust, such a contract is a legal basis for a subsequent promise, and that the execution of or beginning to execute the trust for which the fund is raised, forms a sufficient consideration for such subsequent promise. See also Cong. Soc'y of Troy *vs.* Goddard, 7 N. H., 430.

It is not contended by the defendant in this case but that a portion of the consideration for the original subscription is good and valuable, but it is said the promise of stock is invalid. There is no rule of law better established than this : if an entire consideration for a promise be void, the promise is not binding; but, if the consideration be severable, and if one or more of several considerations, which are the ground of a promise, be only frivolous and insufficient, but not illegal, and others are good and sufficient, then the consideration may be severed, and those which are void disregarded, while those which are valid will sustain the promise. (*See* 1 *Parsons on Cont.*, 379.) Now, in this case, if the consideration be severable, the valid considerations are abundant, aside from the promise of stock, to sustain the promise. The general object of the enterprise, which commends itself to the favorable regard of every good citizen ; the obligations assumed by the promisees ; and, above all, the perpetual scholarship secured to the defendant, which, by reason of the amount subscribed, is made *transferable* (in this respect unlike the scholarship secured to the subscriber of a less sum), were adequate to sustain such original promise, and much more, after the expenditure of money, and other performance of their obligations by the plaintiffs, adequate to sustain this superadded one. But we do not regard this

promise of stock as illegal, nor the certificate for it altogether valueless. The promise is not to do a thing prohibited by law, or *malum in se*, or prohibited in the plaintiffs' charter. Now, the word *stock*, as employed in the subscription paper, and in the certificate issued to the defendant upon the execution of this note, was evidently employed in a special sense, to denote an interest or membership in the Corporation, entirely different from a moneyed interest, upon which the defendant might be liable to assessments, or entitled to dividends. It was not the intention of the plaintiffs, nor do we think it was the expectation of the defendant, that this Institution should issue stock, such as is understood by the ordinary use of the word, which could be the subject of purchase and sale in market, and entitle the purchaser to the benefits usually anticipated from the stock in moneyed and other like Corporations. The nature and objects of this Institution would forbid any other conclusion. A large amount of money was sought to be raised for the purposes of the Seminary. This money, except such as might be required for the erection of buildings, the payment of existing indebtedness, and the trifle which might be expended in procuring the fund, was to be funded, and the interest to be employed exclusively and wholly for the uses of the Institution. As an inducement to liberal subscriptions, the promise was given that the subscribers of one hundred dollars should acquire an *assignable* scholarship, as before suggested, and such an interest in the general fund as might enable him to insist upon its preservation; to secure its appropriation according to the original design (thus, to some extent, investing him with visitatorial powers), and as should entitle him to a return of his money in case of a diversion of the fund, or upon the dissolution of the Corporation. Thus, his one hundred dollars would not only secure to him a perpetual scholarship of much greater value than if not transferable, but would secure to him rights in, and give him a control

over the Institution, which might well be an inducement for its donation.

Subscribing for these purposes, and with these expectations, the defendant afterwards deliberately reiterated his promise by the execution of the note in question, and received therefor the promised certificate of stock and scholarship, and has received, for aught that appears to the contrary, all that he expected or bargained for, so far as he has sought it. There is no pretence that any representations were made, or inducements held out to him, besides those contained in the subscription paper, which influenced him in making his subscription or in giving his note. We think, therefore, that every object sought by him has been attained or secured to him by the certificate he accepted, and that the consideration for the note is adequate.

Let it be certified to the Circuit Court for the County of Wayne, as the opinion of this Court, that the plaintiffs are entitled to recover.

Present, MARTIN, GREEN, WILLSON, BACON, DOUGLASS and JOHNSON, J. J.