NICHOLS v. SEAKS.

1. Contracts—Destruction for Indefiniteness Not Favored.
   Destruction of contracts because of indefiniteness is not favored.

2. Same—Construction—Ambiguities.
   In interpreting doubtful agreements a court will, if possible, attach a sufficiently definite meaning to a bargain of parties who evidently intended to enter into a binding contract and ambiguous words therein should be interpreted most strongly against the party who used them.

3. Same—Indefiniteness.
   Agreement whereby plaintiff was to explain an insurance pension trust plan to defendant, make available certain sales data, render assistance in presenting the plan to clients if aid were requested and help in computation of figures; arrange conferences with attorneys, accountants, and tax and other public authorities when necessary in consummation of a plan; and defendant was to share commissions and not divulge information to plan without plaintiff's written consent, did not fail for indefiniteness.

4. Same—Essentials—Details Supplied by Construction.
   So long as the essentials of a contract are defined by the parties themselves, the law supplies the missing details by construction.

5. Same—Subject Matter—Evidence Dehors Agreement.
   The fact that an insurance pension trust plan which plaintiff permitted defendant to use under an alleged agreement was not set forth in the agreement would not prevent reaching a conclusion that there had been a meeting of the minds with reference thereto even though there must be resort to testimony dehors the agreement to reveal what the plan was to which their writing had reference.

6. Evidence—Varying Writing by Parole.
   The subject matter of which an instrument speaks may be identified by evidence aliunde without infringing the rule which precludes contradiction or variance of the writing by parole.

   Liquidated damages, see 1 Restatement, Contracts, § 339.

7. CONTRACTS—CONSIDERATION—INSURANCE PENSION TRUST PLAN.

Although insurance pension trust plan, concerning which plaintiff alleged he and defendant had contracted, was not a secret conception unknown to others, their contract would be valid where there is sufficient consideration to support defendant's obligation thereunder to share commissions.

8. SAME—FAILURE OF SOME CONSIDERATION.

If there are several considerations to support a promise, and some fail, if the others are good and sufficient, the good will sustain the promise.

9. DAMAGES—STIPULATED DAMAGES FOR BREACH OF CONTRACT.

Where damages are difficult of ascertainment, courts will respect the honest attempt of the parties themselves to compute as best they can the just compensation from loss of the bargain by breach.

10. SAME—STIPULATED DAMAGES FOR BREACH OF CONTRACT—PENALTY.

Before accepting as conclusive the convention of the parties stipulating damages for breach of their contract, it must be examined, and the court must determine whether the pre-determined figure is really in the nature of an attempted computation of the actual damages likely to result or whether it has the effect of exacting a penalty from the contract breaker.

11. SAME—STIPULATED DAMAGES—COMPUTATION.

Provision of contract for use of plaintiff's insurance pension trust plan by defendant whereby defendant was to pay $25,000 to plaintiff as liquidated damages for breach thereof must be ignored in the computation of damages where such provision was not an attempted computation of damages likely to result from breach of contract as to division of commissions, a readily determinable amount, or for refusal to bring legal and tax problems to specified attorneys, failure to communicate to plaintiff the name of prospective purchasers or breach of other provisions.

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted October 9, 1940. (Docket No. 12, Calendar No. 40,931.) Decided January 6, 1941.

Bill by John C. Nichols against William L. Seaks for an accounting, injunctive relief, and stipulated

damages. Bill dismissed. Plaintiff appeals. Reversed and remanded for further proceedings.

*Annis & Cooper* and *McCobb & Heaney,* for plaintiff.

*Smedley & Stribley* (*Linsey, Shivel, Phelps & Vander Wal,* of counsel), for defendant.

BUTZEL, J.  Plaintiff and appellant sought an accounting and injunctive relief.  He claims that he and defendant entered into a written undated contract in January, 1937, in which plaintiff agreed to make available to defendant a "program for the sale of annuity and other insurance contracts in connection with the establishment by employers of pension trust plans," and to assist defendant in contacting clients and in any other matters of detail necessary to consummate a plan for a particular client, et cetera; that defendant agreed not to use the plan or to attempt to use it without disclosing to plaintiff the name of the prospective purchaser, and not to approach any prospects, directly or indirectly, except in conjunction with plaintiff, nor without his written consent; that commissions, after deducting expenses, were to be divided equally; that a particular firm of attorneys was to handle all tax and legal problems, and that defendant was not to divulge any of the knowledge or information obtained in connection with the contract to anyone without plaintiff's written consent.  The contract also provided that because of the difficulty in computing damages, defendant was to pay the sum of $25,000 as liquidated damages in the event of a breach.

Plaintiff's use of a photostatic copy as secondary evidence of the contract was explained by other

testimony from which he asked the trial court to conclude that defendant had unauthorizedly abstracted the original instrument from plaintiff's office files. Five independent similar contracts, each providing for $25,000 liquidated damages, were entered into by plaintiff with other parties. Defendant at first denied ever executing a written contract, but claimed that an oral "joint partnership arrangement" was made in the spring of 1937; he later identified as his own a photostatic copy of a signature which plaintiff claimed was attached to a written contract similar to that given to another party and a photostatic copy of which was also introduced. Defendant further claimed that he was induced to enter into the oral agreement by plaintiff's fraudulent misrepresentations, that the plan submitted by plaintiff was unworkable, and that he had to make a trip east to the insurance company's home office and work out with his attorney a "new and complete pension plan and trust" that was acceptable to the insurance carriers and to his clients. Defendant further asserted that the general scheme plaintiff had was common knowledge in the field and had been available in tax services and publications since April 1, 1937. Defendant also claimed that he paid plaintiff $400 for a complete release from all liability. The claimed release was in the following form:

"June 11, 1937.

"I will give you full release in any claim whatsoever of any part of commission and renewals as belonging to me in accordance with the terms of our contract if you deliver to me $500 in cash by 5 p.m. Friday, June 11, 1937.

"Signed JOHN C. NICHOLS
"Accepted by
"WILLIAM L. SEAKS
"June 11, 1937."

The money was not promptly paid as stipulated in the terms of the offer, but by August 31, 1937, plaintiff had accepted a final payment which made a total of $400. Defendant's check for $100 on August 21, 1937, recited on its face that it was for "payt. in full on pension trust contract arrangement." The record contains also a check of June 22, 1937, for $194, which bears the following notation: "Payt. as per contract arrangement." Plaintiff denied that the $100 check contained the recital of full payment at the time he received it, and denied that the instrument set forth above was intended to be a general release, but insisted that it was only to settle plaintiff's share of the commission on one of defendant's sales. Plaintiff admits that he received the $100 in full settlement of the commission for the first insurance contract defendant wrote with the cooperation of the plaintiff.

The trial court found that defendant did sign a contract in writing in January, 1937, whereby plaintiff agreed to reveal his insurance pension trust plan, and defendant agreed to share his commissions; that plaintiff proposed in writing on June 11, 1937, to accept $500 in full for any claims against defendant under the contract, and that this was not accepted immediately, but that on August 31st, defendant made a final payment of $100, making a total of $400, which plaintiff accepted. The trial court mentioned plaintiff's claim that this $400 was intended to be limited to the commission on one sale only, but the court made no finding as to this claim. The finding further states that the contract is "ambiguous and uncertain," for the plan could be ascertained only by testimony, and that the plan was no secret conception unknown to others or which could not be used by any other individual engaged in the sale of life insurance. Therefore, the trial court concludes, "the contract was of no force or effect from its inception." Accordingly, the bill

was found to be without merit and dismissal was decreed.

The conclusions of the trial court are erroneous in certain respects and incomplete as to others. Destruction of contracts because of indefiniteness is not favored. *Waites* v. *Miller,* 244 Mich. 267; *Shelton* v. *Wilson,* 274 Mich. 433; Restatement, Contracts, § 32:

"In interpreting doubtful agreements a court will, if possible, attach a sufficiently definite meaning to a bargain of parties who evidently intended to enter into a binding contract and ambiguous words in an obligation should be interpreted most strongly against the party who used them." 1 Williston on Contracts (Rev. Ed.), § 37, p. 100.

The letter of the contract is sufficiently clear and definite to manifest the mutual assent of the contracting parties. Plaintiff agreed to explain his plan to defendant and to make available certain sales data; he promised to assist in presenting the plan to clients, if such aid were requested, and to help in the computation of figures; he agreed to arrange conferences with his attorneys, accountants, and tax and other public authorities when necessary in the consummation of a plan. Defendant's obligations, affirmative and negative, are sufficiently clear to show the mutual undertakings. As the promises and performances to be rendered by each party are set forth with reasonable certainty, the agreement does not fail for indefiniteness. Restatement, Contracts, § 32; 1 Williston on Contracts (Rev. Ed.), § 37. So long as the essentials are defined by the parties themselves, the law supplies the missing details by construction. See *Waites* v. *Miller, supra; Siegel* v. *Sharrard,* 276 Mich. 668; 1 Williston on Contracts (Rev. Ed.), § 37 *et seq.;* Restatement, Contracts, § 32. The fact that part of the subject

matter of the agreement, the pension trust plan, is not set forth' does not militate against a conclusion that the minds had met, even though there must be resort to testimony dehors the instrument to reveal what was the plan to which their writing had reference. The subject matter of which the instrument speaks may be identified by evidence aliunde without infringing the rule which precludes contradiction or variance of the writing by parole. *Columbus Sewer Pipe Co.* v. *Ganser,* 58 Mich. 385 (55 Am. Rep. 697); *Borden* v. *Fletcher's Estate,* 131 Mich. 220; *O'Dell* v. *Day,* 214 Mich. 566; *Juif* v. *State Highway Commissioner,* 287 Mich. 35; see, also, 75 A. L. R. 1166.

In ruling that the plan was no secret conception unknown to others and that the contract was of no force from its inception, perhaps the trial court had in mind that there was no consideration for defendant's undertakings. If such were his reasoning, it is erroneous. If we ignore completely this phase of the contract, there remains nevertheless sufficient consideration to support defendant's obligations.

"If there are several considerations, and some fail, yet if the others are good and sufficient, the good will sustain the promise." *Butterfield* v. *Reynolds,* 196 Mich. 157, 167.

See, also, *Wesleyan Seminary* v. *Fisher,* 4 Mich. 515; *Alderton* v. *Williams,* 139 Mich. 296; 1 Williston on Contracts (Rev. Ed.), § 134, p. 469. This conclusion obviates further discussion of the problem of the validity of a contract to disclose a plan. For a collection of cases on this subject, see "Contracts for the Sale of Ideas," 67 United States Law Review, 595.

The next problem to be considered is the effect of the release. Because of the ruling that there was no

binding contract from the start, the trial court deemed it unnecessary to decide the question of whether the release was intended to settle all the obligations of the contract sued on, or merely to compromise the amount of commission on a single sale. As we found that there was a binding contract, the case must be remanded for further proceedings to determine the disputed question of the release. If plaintiff's contention is correct, then, of course, the settlement must be deemed limited only to plaintiff's right to commissions on the one deal for which the release was executed; if defendant's contention is correct, then the bill should be dismissed.

We deem it advisable to consider a question likely to arise again if the trial court upholds plaintiff's version of the release, and proceeds to the computation of damages. Plaintiff contends that the liquidated damage provision should control. We think that plaintiff should be required to prove the actual damages sustained from any breach by defendant. Where damages are difficult of ascertainment, courts will respect the honest attempt of the parties themselves to compute as best they can the just compensation from loss of the bargain by breach. Before accepting as conclusive the convention of the parties, it must be examined, and the court must determine whether the predetermined figure is really in the nature of an attempted computation of the actual damages likely to result or whether it has the effect of exacting a penalty from the contract breaker. *Jaquith* v. *Hudson,* 5 Mich. 123; *Daily* v. *Litchfield,* 10 Mich. 29; *Central Trust Co.* v. *Wolf,* 255 Mich. 8 (78 A. L. R. 843); *Davidow* v. *Wadsworth Manfg. Co.,* 211 Mich. 90 (12 A. L. R. 605); *Orban* v. *Stelle,* 292 Mich. 341; *Decker* v. *Pierce,* 191 Mich. 64. The observation of Justice CHRISTIANCY in *Daily* v. *Litch-*

*field, supra,* 37, 38, is particularly apt in the case at bar:

"Though the parties have called this sum stipulated damages, yet as it applies to several different stipulations of very different degrees of importance, and by the terms of the stipulation would be payable equally on the failure to perform the least as of that to perform the most important, or the whole of them together, it is, in legal effect, but a penalty, and not stipulated damages, since it is evident the parties themselves could not have treated it as a mere compensation for actual damages."

Clearly the $25,000 provision is no attempt to compute the damages from defendant's failure to pay plaintiff's share of the commissions which are readily determinable, nor for refusal to bring all legal and tax problems to the specified attorneys, for failure to communicate to plaintiff the name of any prospective purchaser, et cetera. Yet for breach of any one or all of the promises the penalty prescribed would be the same. This clause of the contract is unmistakably in disregard of the principle of just compensation and must be ignored.

We comment now on another problem apt to arise if the court determines there was not a release from the contract. Although we may judge the case *de novo,* we shall only raise the question so that there will be a determination on the matter by the trial court as the facts are not before us nor is the question briefed. The contract was focused about plaintiff's particular "program for the sale of annuity and other insurance contracts in connection with the establishment by employers of pension trust plans." By the terms of the agreement, plaintiff was to reveal the scheme to defendant, and defendant, in turn, agreed not to divulge any of the ideas obtained therewith without plaintiff's written consent. Thus, secrecy and uniqueness were the

essence of the scheme, although it was, of course, contemplated that there would have to be some limited publication to purchasers of pension trust insurance, and possibly some disclosure to prospective purchasers. It appears that plaintiff knew that comparable plans were in existence for several years, and one of his attorneys testified that ideas were obtained from the form of a plan litigated before the United States Board of Tax Appeals and reported in an early volume of the reports of that tribunal. Shortly after the execution of the contract here at suit, some tax services and life insurance publications published complete detailed pension trust plans with forms. Defendant claimed in his answer and at the trial that the plan plaintiff furnished was not acceptable and that it was necessary for defendant to go to the home office of one of the insurance companies to iron out the objections, and that it was necessary for him and his attorney to work out an entirely new plan independently of plaintiff. If the trial court should find for plaintiff on the issues relating to the release, the trial court should also determine: (1) whether the contract bound defendant as to sales of plaintiff's plan only, or whether it was broad enough to include any sales by defendant of pension trust plans, including plaintiff's scheme, defendant's own, or those offered by published sources (cf. *Gonser* v. *Leland Detroit Manfg. Co.*, 293 Mich. 196) ; (2) whether the plans sold by defendant were plaintiff's schemes or others. These findings will be necessary if damages are awarded to plaintiff and we are asked to review any question relating to amount thereof.

The decree is reversed and the cause remanded for further proceedings not inconsistent with this opinion; costs to plaintiff.

SHARPE, C. J., and BUSHNELL, BOYLES, CHANDLER, NORTH, MCALLISTER, and WIEST, JJ., concurred.