# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

---

MARGRETHE MELTON and EARL MELTON,

        Plaintiffs/Counterdefendants-
        Appellees,

v

RICHARD BARNARD and CHERYL
BARNARD,

        Defendants/Counterplaintiffs-
        Appellants.

UNPUBLISHED
November 29, 2018

No. 339521
Oakland Circuit Court
LC No. 2016-151407-CH

---

Before: M. J. KELLY, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

In this real property action, defendants appeal by right the trial court's order granting plaintiffs' motion to enforce a settlement agreement. Defendants argue that the parties had reached only a preliminary agreement in principle rather than a final binding settlement and that the alleged agreement did not satisfy the requirements of MCR 2.507(G). We affirm.

Plaintiffs initiated this action as a result of a dispute over the use and maintenance of an access easement on defendants' property that plaintiffs had used over several decades. Defendants filed a counterclaim alleging encroachment along the driveway and encroachment on their property following plaintiffs' removal of a farm fence along the westerly boundary of easement. The parties' attorneys entered into negotiations and reached a settlement in principle as documented in a series of e-mail exchanges. Subsequently, the parties reported to the trial court that they had reached an agreement in principle, and they requested two stipulated adjournments in order to allow the parties to begin performance and to "complete the settlement." Several months later, however, defendants' counsel withdrew as attorneys for defendants, and defendants denied that an enforceable settlement had been achieved. The trial court subsequently granted plaintiffs' motion to enforce the settlement agreement.

On appeal, defendants argue that the trial court abused its discretion in granting plaintiff's motion to enforce the settlement agreement because the requirements of MCR 2.507(G) were not met. We disagree.

-1-

"[A]n agreement to settle a pending lawsuit constitutes a contract, and therefore the agreement is governed by legal principles applicable to the interpretation and construction of contracts." *Columbia Assoc, LP v Dep't of Treasury*, 250 Mich App 656, 669; 649 NW2d 760 (2002). This Court reviews the existence and interpretation of a contract de novo. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 773 NW2d 766 (2006). A settlement agreement must also satisfy the requirements of MCR 2.507(G), and we review the interpretation of a court rule de novo. *Michigan Mut Ins Co v Indiana Ins Co*, 247 Mich App 480, 483; 637 NW2d 232 (2001). A trial court's factual findings are reviewed for clear error. MCR 2.613(C). A trial court's finding concerning the validity of a party's consent to a settlement agreement will not be overturned absent a finding of an abuse of discretion. *Vittiglio v Vittiglio*, 297 Mich App 391, 397; 824 NW2d 591 (2012). An abuse of discretion occurs only when the trial court makes a decision that falls outside the range of reasonable and principled outcomes. *Heaton v Benton Constr Co*, 286 Mich App 528, 542; 780 NW2d 618 (2009).

Like other contracts, a settlement agreement must include an offer and acceptance, as well as "mutual assent or a meeting of the minds on all essential terms." *Kloian*, 273 Mich App at 452-453. Acceptance must be unambiguous and in strict conformity with the offer; otherwise, no contract is formed. *Id*. Even if a settlement agreement meets all the formation requirements of contract law, it will not be enforced unless "the agreement also satisfies the requirements of" MCR 2.507(G). *Id.* at 456. MCR 2.507(G) provides:

> An agreement or consent between the parties or their attorneys respecting the proceedings in an action is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney.

"Subscribe means to append, as one's signature, at the bottom of a document or the like; sign." *Kloian*, 273 Mich App at 459 (quotation marks and citation omitted). A signature at the bottom of an e-mail meets this criterion so long as the e-mail also contains the terms of the settlement. *Id.* at 459-460, citing MCL 450.837(4).[1]

On December 13, 2016, plaintiffs' counsel sent an e-mail to defendants' counsel that stated the following:

---

[1] MCL 450.837 provides:

> (1) A record or signature shall not be denied legal effect or enforceability solely because it is in electronic form.

> (2) A contract shall not be denied legal effect or enforceability solely because an electronic record was used in its formation.

> (3) If a law requires a record to be in writing, an electronic record satisfies the law.

> (4) If a law requires a signature, an electronic signature satisfies the law.

David: Thank you for meeting at the property on 12/7/16. It appears we have a settlement in principle, along the following lines.

The parties will execute and record an appurtenant easement, running with the land, from Square Lake Road across the Barnard property, to the Melton property, for the benefit of the Melton property. The easement will be 14 feet in width (slightly larger where the drive flares near Square Lake Road), starting from the western edge of the utility pole that lies just west of the cyclone fence. The easement will consist of a drivable surface and a shoulder area west of the drivable surface. The rocks, when moved to the agreed upon locations (as agreed upon on 12/7/16) will constitute the western edge of the easement.

Vehicles may travel only on the drivable surface within the easement. The western edge of the drivable surface will be defined by a series of irons to be placed by mutual consent of the parties. David, you will need to meet with Lloyd Melton on the property (without Richard or Cheryl) to mark the exact location of the irons and mark the placement of the rocks. We will obtain irons from Nowak & Fraus which can be used for this purpose.

If they remain, the rocks will be placed at a mutually agreeable distance from the western edge of the drivable surface (generally, approximately 2 feet), as was agreed upon on 12/7/16. The Barnards will remove most of the bushes and small black walnut saplings near the rocks, except as otherwise agreed upon on 12/7/16, and restore grass in those area[s]. If the Barnards or their successors wish to place thin flexible plastic or fiberglass "sticks" as markers along the easement, they will be near the new location of the rocks, not close to the edge of the drivable surface. The Meltons and their successors are allowed to trim any trees and bushes whose limbs are close to the edge of the drivable surface. The Meltons and their successors (along with Ryan Woodke and his successors) will be responsible to maintain the easement.

Nowak & Fraus will measure the location of the irons and the dimensions of the both the drivable surface and the easement. Nowak & Fraus will prepare a legal description of the easement, including the drivable surface therein. The cost of these measurements is estimated at approximately $500, and the parties agree to share equally in that cost. The cost of preparing the written easement legal description, for recording, is also estimated at $500, and the parties agree to share equally in that cost as well.

If the right of way area east of the easement is developed into a fully-functioning road that connects with the Melton property, that road shall become the means of ingress and egress to the Melton property, and the private easement across the Barnard property that the parties are hereby recording shall be terminated.

The fence between the Melton property and the Barnard property does not run on the true property line. Nowak & Fraus has prepared a certified survey of the property boundaries. The cost of that survey is $2,500, and the parties agree to

share equally in that cost. The Barnards will not request or require that any portion of the Melton house structure be removed or relocated so long as the Melton house structure is not permanently demolished and is occupied by the Meltons, their heirs and/or their assigns. The boundary fence will remain as-is, and will not be removed or relocated unless the fence is being demolished and replaced by the Meltons or their successors, or unless the Melton house structure is permanently demolished. The Meltons and all successor owners of the Melton property shall make no claim as to any legal title to the strip of land between the current fence and the true property boundary. Such agreement shall be recorded so as to run with the land.

Once you confirm this settlement in principle, we should inform the Court and adjourn all pending case dates. The parties will adjourn all case dates, so as to allow the parties to complete the final settlement documents. Upon execution of the final settlement documents, and recording of the easement(s), all claims and counterclaims in the lawsuit shall be dismissed with prejudice, without costs or attorneys to any party.

Please confirm this agreement in principle, and/or advise of any additions you can think of, so we can begin the drafting process of the final documents together. Also, please advise when you wish to meet with Lloyd Melton at the property.

Defendants' counsel responded:

Agree. I do have some comments on your settlement summary which I am working on. Unfortunately[,] this extremely cold weather will hamper our ability to set irons and get additional survey work. I will try to call you this afternoon to discuss details on moving forward with settlement.

Two days later, defendants' counsel replied by e-mail that he had been overwhelmed and would do his best to get a response to plaintiffs' counsel. He added, "We do have an agreement in principle." Both the December 13, 2016 reply, which specifically indicated defendants' counsel's agreement, and the December 15, 2016 reply, which confirmed that the parties had an agreement in principle, contained the attorney's name typed at the end of the message. Therefore, the subscription requirement of MCR 2.507(G) was satisfied. *Kloian*, 273 Mich App at 459. Accordingly, the trial court did not abuse its discretion in concluding that the e-mailed agreement complied with the subscription requirement of MCR 2.507(G).

Defendants also argue that the requirements of MCR 2.507(G) were not met because the parties never placed the specific terms of the agreement on the record. Because MCR 2.507(G) requires *either* a subscribed writing *or* the agreement or consent to be placed on the record, the requirements of MCR 2.507(G) were satisfied by the fulfillment of the subscription requirement as discussed above, and plaintiffs were not required to also place the terms on the record. Nevertheless, following the December e-mail exchange, the parties represented to the trial court that they had reached an agreement in principle, and they stipulated to adjournments in order to proceed with the tasks outlined and to finalize the settlement. The statements placed on the

record both at the hearing and through written stipulations supported the trial court's finding of the existence of an enforceable agreement.

Next, plaintiffs argue that the parties did not finalize a formal settlement agreement and that an agreement in principle should not bind the parties. However, our review of the documents considered by the trial court indicates that the parties had agreed to settle this matter, had reached an agreement in principle, and were actively working towards a comprehensive written agreement. Furthermore, although defendants' counsel acknowledged in his first reply e-mail that he had "some comments," he did not object to any of the terms of the agreement. In fact, in response to plaintiffs' counsel's request that he confirm the agreement in principle, defendants' counsel replied that he agreed and would be in contact to finalize the settlement. The determination of whether a contract sufficiently covers all material terms rests on whether the "promises and performances to be rendered by each party are set forth with reasonable certainty" and whether the "essentials are defined by the parties themselves." *Nichols v Seaks,* 296 Mich 154, 159; 295 NW 596 (1941). In some cases, the law may supply missing nonessential details of a contract by construction. See *Smith v Dep't of Treasury*, 163 Mich App 179, 185; 414 NW2d 374 (1987) (The trial court implied a reasonable time of three years after the stated redemption date to make demand for payment of a debt certificate.).

In this case, the agreement outlined by plaintiffs' counsel specified the width of the easement area and where it would start and where it would end, even detailing where vegetation, landscaping, and rocks were affected by the agreement. The e-mail discussed the preparation and recording of written instruments, with an agreement on how costs would be split. It also resolved the issue of encroachment with the fence to resolve any boundary disputes at present and in the future. The list of agreements contained in the e-mail was specific enough to address the parties' disputed issues. Furthermore, there was no indication in the communications that any essential terms were left to be negotiated in the future. Rather, a review of the agreement suggests that only performance of the negotiated terms remained before the case could be dismissed. Subsequently, the parties proceeded to act in accordance with the agreement by placing stakes in the ground and contacting surveyors. There was an offer to settle the case outlined by plaintiffs' counsel, an acceptance by defendants' counsel, and a meeting of the minds on the essential terms of the agreement. *Kloian*, 273 Mich App at 452-453. The proposed settlement agreement e-mails, stipulations evidencing that an agreement was reached, and the parties' actions were sufficient to create an enforceable contract between the parties.[2]

---

[2] Defendants also argue that their prior counsel did not share the settlement agreement with them and did not have the authority to settle this matter. But defendants' appellate counsel waived this argument by failing to provide the transcript of the June 28, 2017 hearing on the motion to withdraw as attorneys for defendant, contrary to MCR 7.210(B)(1)(a). See *Kern v Kern-Koskela*, 320 Mich App 212, 229-230; 905 NW2d 453, 465 (2017). Accordingly, we decline to address the issue further, other than to note that when a party hires an attorney to represent them in a legal matter, the party clothes the attorney with apparent authority to settle claims with respect to the matter, and "[a] third party who reaches a settlement agreement with an attorney employed to represent his client in regard to the settled claim is generally entitled to enforcement

We affirm.  Plaintiffs, having prevailed, may tax costs pursuant to MCR 7.219.

/s/ Michael J. Kelly
/s/ David H. Sawyer
/s/ Jane E. Markey

---

of the settlement agreement even if the attorney was acting contrary to the client's express instructions." *Nelson v Consumers Power Co*, 198 Mich App 82, 89-90; 497 NW2d 205 (1993) (citations and quotation marks omitted).