*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF ALPENA,

        Plaintiff/Counterdefendant-
        Appellee/Cross-Appellant,

v

TOWNSHIP OF ALPENA,

        Defendant/Counterplaintiff-
        Appellant/Cross-Appellee

and

ALPENA TOWNSHIP CLERK and MARIE
TWITE,

        Defendants.

UNPUBLISHED
March 17, 2020

No. 345817
Alpena Circuit Court
LC No. 14-006077-CK

Before: O'BRIEN, P.J., and JANSEN and GLEICHER, JJ.

PER CURIAM.

The city and the township of Alpena have been battling since 2014 over the cost of water and sewer services. On March 1, 2018, it appeared the parties were prepared to settle. However, the city and township never reached an agreement regarding several outstanding essential terms. Despite that no settlement was actually reached, the trial court entered a final judgment purporting to enforce a settlement agreement. This was done in error.

In cross-appeals, the parties raise several challenges to the entry of the judgment, the judgment provisions, and the trial court's earlier ruling on a motion for summary disposition. We affirm the denial of summary disposition, vacate the court's final judgment, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

The city of Alpena has provided wholesale water and sewer services to the township of Alpena since 1977. In 2014, the Alpena City Council voted to drastically increase the rates charged to the township. The city filed suit when the township refused to pay these new rates. On February 28, 2018, the Alpena City Council and the Alpena Township Board of Trustees approved "agreement[s] to settle water/sewer lawsuit" as part of the ongoing litigation. The agreements were identical in many respects but diverged on certain points. The Township's resolution provided:

[B]ased upon the joint recommendation of the City's rate expert and the Township's rate expert, [the City Council and the Township Board] agree[] to settle the pending lawsuit based upon the following general terms[1]:

1. The rates for the Township would be established based upon the utility basis of rate making.

2. The rates would be subject to annual reconciliations of actual and audited financial results and volumes.

3. The rates would be established using an 8% rate of return.

4. Water treatment expenses will be allocated based upon current billed volumes, inclusive of/adjusted to account for water losses.

5. Shared water distribution expenses will be allocated based upon volumes inclusive of water losses, with the shared system being defined as 61% of the City's system with that percentage remaining fixed for a term of 10 years. After 10 years the parties will use a specific process to be determined as part of the settlement for allocating the percentage of the City's system that is common.[2]

6. Shared sewer collection expenses will be allocated based upon billed (for [operating and maintenance] expenses) or total volumes (for Capital expenses), excluding measured volumes through the Township's State Street forced main, with the shared system being defined as 23% of the City's system with that percentage remaining fixed for a term of 10 years. Subject to review as stated above.

---

[1] The City Council resolution included the following additional language: "with the settlement of the current lawsuit to be effective upon the execution of a formal written agreement."

[2] The City Council approved a different version of this provision: "Shared water distribution expenses will be allocated based upon volumes inclusive of water losses, with the shared system being defined as 61% of the City's distribution system and subject to the terms and conditions outlined by the City Attorney."

7. Sewer treatment expenses will be allocated based upon billed volume (for [operating and maintenance] expenses and approximately 25% of Capital expenses) and total volumes (for approximately 75% Capital expenses), per information provided by William Stannard, Rate Expert for the City of Alpena and Andrew Burnham, Rate Expert for the Township of Alpena.[3]

8. The escrow account will be distributed by applying the agreed settlement formula to the period beginning May 2014, any funds due and owing to the City of Alpena following this application will be paid and will include judgement interest pursuant to statute.[4]

9. A formal written agreement will be prepared by counsel for the City and Township and presented to the Board, as well as the Township Board, for final approval consistent with above.[5]

The next day, which was to be the second day of trial, the township's attorney advised the court of the votes:

*[Township Attorney]*. . . . Well the parties are pleased to announce to the court . . . that they have reached an agreement. Both the counsel [sic] and the Township Board have taken votes to approve the principles of the agreement that they discussed in their earlier settlement conference. The (inaudible) terms since there's a matter of settlement and . . . they're gonna be finalized. But the parties are satisfied that they are the terms that were set forth by the experts.

The next step, pursuant to the agreement is that . . . counsel will get together and hash out the essential terms in writing so that their respective boards or counsel [sic] can review that in writing and approve those. We need a little bit more detailed framework in order to draft a formal agreement.

So after the term sheet is worked out, which we expect to be finished by the weekend. But by Monday I hope. Then we will submit a written settlement agreement to each other for final approval. . . .

\* \* \*

---

[3] The City Council passed a different version of this provision: "Sewer treatment expenses will be allocated based upon billed volume (for operating and maintenance expenses and capital expenses) and total volumes for capital expenses."

[4] This provision of the City Council resolution clarified that it applied to the escrow account "that currently exists."

[5] The city's resolution included a tenth point: "The City Attorneys are authorized to sign a stay of proceedings order regarding the current lawsuit while the written settlement agreement is being drafted and then ultimately to be reviewed and executed by the City and the Township."

*[City Attorney]*. You're [sic] Honor that's a correct statement by [the township's attorney]. The City concurs with what he just placed on the record and we will prepare the necessary documents as soon as practical.

But the parties did not "hash out" the essential terms and their "agreement" to settle never matured into an actual written settlement agreement. On May 31, 2018, the court ordered the parties to appear for a status conference on July 27. Thereafter, the township filed a "summary of post settlement activities and request to enforce the settlement agreement," as well as a proposed judgment. At the July 27 status conference, the city's attorney challenged any request for the court to enter a final judgment:

> One of the problems with the court entering any final judgment or order is the language that both parties agreed to at the time of the trial, which was that there'd be a final written agreement that would reflect what the parties thought they agreed to. And that those would be presented to both the City Council and the Township Board for final approval consistent with the above.

> And that has not taken place. We have not gotten that far in the process unfortunately. And whether it be the Township[']s fault or the City's fault or nobody's fault the agreement that was placed on the record contemplated that. And so I'm not sure how the court could enter a final judgment that requires the parties to be bound by that particular language when that has not occurred yet.

The court acknowledged on the record that the parties had simply made "an agreement to agree later either in writing or otherwise" and that this preliminary agreement was "non-enforceable" as a final agreement. The court continued:

> But my recommendation to the City is simply this. You've been presented with a, a final judgment. I recommend that you present your own . . . proposed final judgment within [21] days from today. And what I'll do is I'll compare the two and see . . . which one most closely purports with the statement made on the record. . . . [O]f which there were several important and critical agreements, elements that might conclude this litigation. Do that within [21] days and I'll compare the two and issue my ruling.

The city eventually filed its own proposed judgment and the parties lodged objections to each other's proposals. One of the main points of contention was whether the terms of the judgment should apply only to the rates accumulated thus far, or would revise the contract into the future. "Based on a review of the respective bodies' meeting minutes, an audio recording of the City's meeting minutes, a transcript of the March 1, 2018 court proceeding, and the parties' respective arguments," the circuit court outlined the "principle terms of the settlement that are binding upon both parties." These provisions mostly mirrored the resolutions passed by the city council and township board. The court added the following elements, however:

> e. Shared water distribution expenses will be allocated based upon volumes inclusive of water losses, with the shared system being defined as 61% of the City's system.

f. The percentage of 61% shall remain fixed until the City first provides the Township a complete hydraulic water model of the City's system. Within 6 months after the City provides the Township the City's water model, the Township will either agree with the output of that model as conclusive of the Township's use of the City's system or provide notice of a dispute of the City's water model output. The City's engineer and the Township's hydraulic modeler will meet, either orally or in person, to establish a third-party independent engineer who will then review the conclusions of both parties. If the third-party independent engineer agrees with neither parties' output, then the third-party independent engineer shall establish what he or she believes is the accurate model output, which shall become the Township's percentage of use of the City's system. If the parties hire a third-party independent engineer, the costs of the third-party independent engineer will be split equally between the parties. If the Township does nothing during that 6-month period, the City's water model output will be the Township's use of the City's system. The percentage will remain fixed, except that it is subject to the same review process every 5 years thereafter.

* * *

i. [The parties' rate experts] will meet as soon as possible to prepare a written rate methodology that will be incorporated into a formal written agreement to be executed by the parties.

Despite that provision (f) referenced five-year review periods, the court subsequently found that the judgment's terms were limited to a specific timeframe—May 1, 2014 through June 30, 2018. The court then ordered the township to pay the city designated amounts for water and sewer services for different periods between May 1, 2014 and June 30, 2017. The court noted that the parties had yet to agree on the sums owed in the 2018 fiscal year.

## II. JUDGMENT BASED ON SETTLEMENT AGREEMENT

The parties filed cross appeals challenging various provisions of the court's judgment. The judgment cannot stand, however, as the court attempted to enforce a "settlement agreement" that was never placed on the record.

"An agreement to settle a pending lawsuit is a contract and is to be governed by the legal principles applicable to the construction and interpretation of contracts." *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 773 NW2d 766 (2006) (quotation marks and citation omitted). For a settlement agreement to be formed, just as with any contract, there must be an offer and acceptance as well as "mutual assent or a meeting of the minds on all the essential terms." *Id*. at 452-453. "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Id*. at 454 (quotation marks and citations omitted). "Mere discussions and negotiation, including unaccepted offers, cannot be a substitute for the formal requirements of a contract." *Kamalnath v Mercy Memorial Hosp Corp*, 194 Mich App 543, 549; 487 NW2d 499 (1992). And where the parties have not "met upon all

-5-

the essential particulars," the court may not create the missing essentials. *Czeizler v Radke*, 309 Mich 349, 358; 15 NW2d 665 (1944) (quotation marks and citation omitted).[6]

"However, this Court will not enforce a settlement agreement" even if it "fulfills the requirements of contract principles if that agreement does not also satisfy the requirements of the court rule." *Mich Mut Ins Co v Indiana Ins Co*, 247 Mich App 480, 484-485; 637 NW2d 232 (2001). Specifically, MCR 2.507(G) provides that a settlement agreement "is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney." " 'Subscribe' means to append, as one's signature, at the bottom of a document or the like; sign." *Kloian*, 273 Mich App at 459 (quotation marks and citation omitted).

Here, the parties did not enter a settlement on the record and they did not have a meeting of the minds on the essential terms of the agreement. On March 1, 2018, the township's attorney stated in open court that the parties had "reached an agreement." Counsel noted that the city council and township board had voted "to approve the principles of the agreement." However, counsel then asserted that the parties had yet to reach an agreement on "the essential terms" of the settlement—"The next step . . . is that . . . counsel will get together and hash out the essential terms in writing. . . ." Without a meeting of the minds on the essential terms, there cannot be a settlement. Without stating those essential terms in open court or having both parties subscribe to a writing with the essential terms, the court cannot enforce a "settlement."

The city council and township board votes also support that the parties did not reach a meeting of the minds over the settlement's essential terms. The city council and township board approved only "general terms" and even those were not identical. There was critical variance within those general terms; the township approved entering an agreement where the allocation percentage for water distribution expenses would be fixed for a 10-year period, while the city did not. The township also approved the general terms on the caveat that the city's and township's rate experts would provide certain information, while the city did not. The length of the contract and the availability of information were hotly contested issues in this case and were essential terms for contract formation.

Accordingly, the circuit court improperly entered a judgment based on the parties' "settlement agreement." As the court should not have entered the judgment, we need not consider the parties' various challenges to the provisions of that judgment. Instead, we vacate the judgment in its entirety and remand for further proceedings. If the parties have yet to agree on the essential terms of their contract, both past and present, a full trial may be required.

### III. SUMMARY DISPOSITION

The city further challenges the circuit court's earlier denial of its motion for partial summary disposition in its favor of Count I of its complaint. That count sought a declaratory judgment that the parties' 1977 agreement "had expired and has terminated under its own terms

---

[6] If the missing terms are not "essential," however, "the law supplies the missing details by construction." *Nichols v Seaks*, 296 Mich 154, 159; 295 NW 596 (1941).

given the fact that Defendant Township of Alpena has a viable alternative water and sewer system that can be feasibly developed or may feasibly purchase water and sewer services from the City of Alpena." The city sought summary disposition only regarding the township's "proportionate share" of the sewer services. In support of its motion, the city contended that it was required to charge the township its "proportionate share" as a recipient of the sewer services under the terms of a federal grant it secured to construct the system.

The township directly addressed this argument. However, the township first asserted that the court would not be required to reach this issue if the court agreed with its position that under the common-law utility basis of ratemaking, the city was required to charge a "reasonable rate" and had not.

The court denied the city's motion. In doing so, the court made the following statement that is challenged by the city on cross-appeal:

> Regardless of the label attached to the Township, i.e., as a "wholesale" or "retail" customer, the central issue remains the same: whether the rates are reasonable. In addressing this, the Township has not identified any specific unreasonable charge. Rather, it contends the rates – as a whole – are unreasonable *per se*.

The challenged statement was only a small part of the court's analysis of this issue, however. The trial court further noted that "[h]istorically, courts have accorded great deference to authorized-rate making authorities when reviewing the validity of municipal water rates" and acknowledged that such "rates are 'presumptively reasonable' because 'courts of law are ill-equipped to deal with the complex, technical processes required to evaluate the various cost factors and various methods of weighing those factors required in rate-making.' "[7] Ultimately, the court ruled that it could not "conclude that the rates are unreasonable at this juncture. For it has been widely held that the determination of 'reasonableness' is considered to be a question of fact."

However one characterizes the city's challenge, it stands true that there remained questions of fact in the summer of 2016, precluding summary disposition at that time.

> A motion under MCR 2.116(C)(10) "tests the factual support of a plaintiff's claim." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh*, 263

---

[7] Although a city's utility rates are presumptively reasonable, "the presumption of reasonableness may be overcome by a proper showing of evidence." *Trahey v Inkster*, 311 Mich App 582, 594; 876 NW2d 582 (2015).

Mich App at 621. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183. [*Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013).]

Voluminous evidence would be required to determine the appropriateness of the water and sewer rates charged in this case. But as late as the summer of 2018, two years after the court denied summary disposition, the city was still withholding information necessary to make those calculations. Accordingly, it would have been premature to grant summary disposition in either party's favor in the summer of 2016.

We affirm the denial of summary disposition, but vacate the September 19, 2018 final judgment and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Kathleen Jansen
/s/ Elizabeth L. Gleicher