527 A.2d 1333

**Kimberly Ann HUNTT**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.**

**No. 1554, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

July 14, 1987.

Certiorari Denied Dec. 9, 1987.

Christopher A. King (William J. Blondell, Jr., on brief), Baltimore, for appellant.

Leonard C. Redmond, III and David R. Durfee, Jr. (Horn, Bennett & Redmond, P.A., on brief), Baltimore, for appellee.

Argued before KARWACKI, WENNER and POLLITT, JJ.

KARWACKI, Judge.

Kimberly Ann Huntt, the appellant, was injured in an accident on February 2, 1985, while she was a passenger in an automobile insured under a policy of automobile liability

insurance issued in Maryland by the appellee, State Farm Mutual Automobile Insurance Company (State Farm). Section II of that policy contained provisions for the payment of personal injury protection (PIP) benefits, as required by Md.Code (1986 Repl. Vol.), Art. 48A, § 539(a). Ms. Huntt was an "insured" as that term was defined in Section II of that policy.

As a result of the injuries she sustained, Ms. Huntt incurred expenses for medical treatment. She requested that State Farm reimburse her for those medical expenses under the PIP provisions of its policy. In support of that request, she supplied State Farm with copies of her medical reports and bills. State Farm reimbursed Ms. Huntt for her medical expenses until October 31, 1985, when it advised Ms. Huntt that it would not pay any further benefits unless she submitted to a medical examination by a physician selected by State Farm. State Farm's request that Ms. Huntt submit to a medical examination was made pursuant to paragraph 4(b) of the policy section applicable to PIP benefits entitled "Reporting a Claim-Insured's Duties." That provision allowed State Farm to require that a person making a claim "be examined by physicians chosen and paid by [State Farm] as often as [it] reasonably may require."

Ms. Huntt continued to receive medical treatment after October 31, 1985 and to send State Farm her medical bills seeking reimbursement. She refused, however, to submit to a medical examination by a physician of State Farm's choice. Because of Ms. Huntt's refusal to be examined, State Farm continued to refuse her requests for reimbursement. On May 6, 1986, Ms. Huntt filed a three-count complaint against State Farm in the Circuit Court for Baltimore City. She sought damages in Count I for breach of contract and in Count II for "tortious breach of duty of good faith and reasonable care." In Count III she requested a declaratory judgment concerning State Farm's obligations under the PIP provisions of its policy.

State Farm moved to dismiss Ms. Huntt's complaint pursuant to Rule 2-322 on the ground that it failed to state any

claims upon which relief could be granted. After a hearing, Judge Thomas Ward granted State Farm's motion and entered judgment in its favor. Ms. Huntt appeals from that judgment, contending:

    I.  The Maryland PIP statute does not permit an insurer to require a beneficiary under the statute to submit to an examination by a physician chosen and paid by the insurer before the insurer's obligation to pay benefits required by the statute accrues.

    II.  An action may be maintained in the Maryland courts against an insurer by an insured for tortious breach of duty of good faith and reasonable care in the handling of a claim against the insurer by the insured.

The appellant's argument that the PIP statute does not permit an insurer to require a beneficiary to submit to a physical examination is premised on the notion that such a requirement is somehow at odds with the "remedial purpose" of Maryland's no-fault automobile insurance legislation. The Court of Appeals recently reiterated that "[t]he primary purpose of § 539 is 'to assure financial compensation to victims of motor vehicle accidents without regard to the fault of a named insured or other persons entitled to PIP benefits.'" *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 75, 517 A.2d 730 (1986) (quoting *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Gartelman*, 288 Md. 151, 154, 416 A.2d 734 (1980)). In keeping with that "clear remedial purpose, [citation omitted], a liberal construction of the statute is required." *Tucker v. Fireman's Fund Ins. Co., supra*, 308 Md. at 77, 517 A.2d 730. This does not mean, however, that we should construe the statute so as to preclude an insurance company from enforcing a policy provision that is not in conflict with any statutory provision. *See DeJarnette v. Federal Kemper Ins. Co.*, 299 Md. 708, 725, 475 A.2d 454 (1984).

The statutory language requiring construction in this case is found in Md.Code, *supra*, Art. 48A, § 544(a), which provides in part: "All payments of benefits prescribed

under § 539 shall be made periodically as the claims therefor arise and within 30 days after *satisfactory proof* thereof is received by the insurer...." (Emphasis supplied). The appellant asserts that, by sending State Farm copies of her medical reports and bills, she satisfied the statutory requirement of "satisfactory proof" and that the State Farm policy provision imposing the additional condition of a physical examination is repugnant to that legislative standard and hence unenforceable. She attempts to distinguish between "reasonable medical proof," a term used in § 539(a) and again in § 544(a)(2), and "satisfactory proof." Section 539(a) permits an insurer providing loss of income benefits to require, as a condition of receiving such benefits, "that the injured person furnish the insurer reasonable medical proof of his injury causing loss of income." Section 544(a)(2) permits an insurer to require "reasonable medical proof" when an injured person who received benefits under the coverage(s) described in § 539 seeks additional benefits after a lapse in the period of disability or in medical treatment. In the appellant's view, these uses of "reasonable medical proof" as the standard of proof in certain particularized situations reflect a legislative intention that "reasonable medical proof" should be a higher standard than "satisfactory proof."

Whatever the distinction, if any, between "reasonable medical proof" and "satisfactory proof," we do not think it has a bearing on the resolution of this appeal. The only question we need to address is whether an insurer seeking "satisfactory proof" of a PIP claimant's request for benefits may require the claimant to undergo a physical examination by a physician selected and paid by the insurer.

■ Section 544(a) mandates that "payments of benefits prescribed under § 539 shall be made ... within 30 days after satisfactory proof thereof is received by the insurer...." The benefits prescribed under § 539 include: "payment of all *reasonable* expenses arising from the accident and incurred within three years from the date thereof for *necessary* medical, surgical, x-ray and dental services,

including prosthetic devices, and *necessary* ambulance, hospital, professional nursing and funeral services...." (Emphasis supplied). While § 539 was enacted in order to assure prompt payment of PIP benefits without regard to fault, this does not mean that PIP coverage was intended to provide a PIP claimant with a blank check. Maryland's no-fault statute, like those of other states, places a control on inflated or spurious claims by limiting the insurer's obligation to payment of "reasonable" expenses for "necessary" services arising from the accident in question. 5 M. Minzer, et al., *Damages in Tort Actions* § 47.12[2][b] (1987). In our view, it would be impossible in many cases for an insurer to determine whether a PIP claimant's expenses were "reasonable" and for "necessary" services if the insurer could not require that the claimant be examined by a physician of its choice. Therefore, we hold that a policy provision permitting an insurer to require that a PIP claimant submit to a physical examination as a condition precedent to payment of benefits is consistent with the statutory mandate in § 544(a) that payment shall be made after the insurer receives "satisfactory proof" of the claim.

The remedial purpose of the no-fault statute does not dictate that the State Farm policy provision be held unenforceable simply because that provision may cause some delay in the payment of PIP benefits. When a policy provision is not in conflict with the statute, that provision will be enforced, the statute's underlying purpose notwithstanding. Thus, in *DeJarnette v. Federal Kemper Ins. Co.*, *supra*, the Court of Appeals upheld a provision in an automobile liability policy excluding from PIP coverage persons injured while using a motorcycle. DeJarnette had been injured while riding a motorcycle as a passenger. He sought to recover PIP benefits under his father-in-law's automobile liability policy based on his status as a member of his father-in-law's household. The Court determined that § 545(b) made motorcycles subject to exclusion from PIP coverage and that §§ 539 and 545, read together, indicated a legislative intention to allow motorcycle exclusions for

any person covered under § 539, and not merely the named insured. *DeJarnette, supra,* 299 Md. at 725, 475 A.2d 454. Accordingly, the policy exclusion in *DeJarnette* was held valid because it was not in conflict with the statute.

In *Provident General Ins. Co. v. McBride,* 69 Md.App. 497, 518 A.2d 468 (1986), *cert. denied,* 309 Md. 326, 523 A.2d 1013 (1987), we considered whether an automobile liability policy properly excluded from uninsured motorist (UM) coverage an automobile owned by McBride, the named insured. Rejecting McBride's argument that the exclusion was invalid because the statute requiring UM coverage should be liberally construed in order to promote its purpose of assuring recovery to innocent victims of motor vehicle accidents, we pointed out that the policy exclusion at issue was specifically authorized by Art. 48A, § 541(c)(2)(i). 69 Md.App. at 507, 518 A.2d 468. Given the specific legislative authorization for such an exclusion, we declined "to insert or delete words to ascertain a legislative intention different from [the statute's] clear meaning." *Id.* Although § 544(a) may not expressly authorize a policy provision such as that in the case *sub judice,* we think such a provision is contemplated by the statute's terms.

The appellant also argues that requiring her to undergo a physical examination would place upon her the burden of litigating her claim if State Farm's examining physician was of the opinion that the expenses for which she sought reimbursement were unreasonable and/or that the treatment she received was unnecessary or not causally related to the accident in question. While that may be true, in order to make an informed decision as to whether a PIP claim should be paid, an insurer is entitled to the benefit of having a claimant examined by someone other than his or her own treating physician(s). Although disagreements between physicians as to the best course of treatment for a particular injury are not uncommon, we do not think the legislature intended that the opinion of the claimant's physician should be conclusive in every case. Nor do we think the legislature intended that insurance companies should be

left unprotected against unreasonable PIP claims. Accordingly, we hold that the term "satisfactory proof" in § 544(a) encompasses the right of an insurance company to demand that a PIP claimant submit to a physical examination by a physician selected and paid by the insurer.

The appellant cites several cases from other jurisdictions in support of her argument that the medical bills and reports she submitted to State Farm should be considered satisfactory proof of entitlement to PIP benefits. In none of those cases, however, did the court address whether a medical examination provision was permitted by statute. In *Hart v. Allstate Ins. Co.*, 426 So.2d 711 (La.App.1982), *modified*, 437 So.2d 823 (La.1983), the court found that the insured had submitted "satisfactory proof of loss," as that term is used in a Louisiana statute governing uninsured motorist claims, by sending medical bills, medical reports and a medical authorization form to her insurer. 426 So.2d at 713–14. There was no discussion in either Louisiana appellate court's opinion, however, as to whether an insurer could require a claimant to submit to a medical examination as part of its investigation of the claim, since that was not at issue in the case. In *Kentucky Farm Bureau Mut. Ins. Co. v. Roberts*, 603 S.W.2d 498 (Ky.App.1980), the court found that "reasonable proof of loss" had been provided to the insurer on a claim for basic reparation benefits where the claimant forwarded copies of her attending physicians' bills and furnished the insurer with a completed medical authorization form. 603 S.W.2d at 499–500. Again, the issue before us was not presented to the Court in *Kentucky Farm Bureau.*[1] The courts in *Hagains v. Government*

---

1. Even if the court in *Kentucky Farm Bureau* had addressed the issue that is before us, a contrary result would not have influenced our decision, since Kentucky, unlike Maryland, has created by statute a presumption that medical bills submitted in support of a claim for reparation benefits are reasonable. Ky.Rev.Stat. § 304.39–020(5)(a) (1981 Repl.Vol.). Kentucky also provides by statute that an insurer may petition a court to have an insured submit to a medical examination. *Id.* § 304.39–270.

*Employees Ins. Co.*, 150 N.J.Super. 576, 376 A.2d 224 (1977), and *DiBassie v. American Standard Ins. Co. of Wisconsin*, 8 Kan.App.2d 515, 661 P.2d 812 (1983), likewise did not consider whether an insurer may require an insured to submit to a medical examination as a condition precedent to payment of benefits. Indeed, both New Jersey and Kansas have specific statutory provisions authorizing insurers "to include reasonable provisions" in motor vehicle liability policies for mental and physical examination of those persons claiming personal injury protection benefits. Kan.Stat.Ann. § 40–3115(a) (1986); N.J.Stat.Ann. § 39:6A–13d. (1973).

Where the issue has been presented, such policy provisions have been upheld. *Jensen v. American Family Mut. Ins. Co.*, 683 P.2d 1212 (Colo.App.1984); *Morris v. Aetna Life Ins. Co.*, 160 Ga.App. 484, 287 S.E.2d 388 (1981). In *Jensen* the plaintiffs, a husband and wife, brought suit against the defendant insurance company, alleging that the insurer "had willfully and wantonly refused to pay" PIP benefits for personal injuries sustained by the wife in two automobile accidents. 683 P.2d at 1213. On appeal from a jury verdict in favor of the insurer, they contended that a policy provision conditioning payment of benefits upon examination "by physicians selected by the company, when and as often as the company may reasonably require," was an impermissible restriction on the coverage specified by Colorado's no-fault statute. The Colorado court disagreed and held that the provision at issue did not conflict with the basic purpose of the No-Fault Act, which is "to avoid inadequate compensation to victims of automobile accidents." *Id.*

Similarly, the court in *Morris* concluded that a medical examination provision in an automobile liability policy did not violate Georgia's no-fault statute. The plaintiff there, an additional insured under his mother's policy, sued the defendant insurer for failure to pay PIP benefits allegedly

due. On appeal from the trial court's entry of summary judgment for the insurer, he contended that because the statute authorizing PIP coverage did not expressly mention an insurer's right to request a medical examination in investigating such claims, the insurer had no right to require such an examination. Noting that such a conclusion by the court "would at least tend to ignore the possibility of the exercise of potential fraud," the Georgia appellate court rejected the appellant's argument, stating, "It hardly can be argued that an insurer cannot investigate what reasonably appears to be a questionable claim simply because the underlying statute authorizing the coverage does not mention such investigative rights." 287 S.E.2d at 390. Accordingly, the court held that the insurer's right to require a medical examination was neither a limitation on an insured's right to collect PIP benefits, nor a violation of public policy or of the Georgia no-fault statute.

■ In summary, we find nothing in Maryland's no-fault statute that would render unenforceable the State Farm policy provision at issue in this case. State Farm therefore had a contractual right to deny the appellant's claim for PIP benefits based on her failure to comply with the condition precedent that she submit to a medical examination by a physician of State Farm's choice. *Cf. Government Employees Ins. Co. v. Harvey,* 278 Md. 548, 554, 366 A.2d 13 (1976). In view of our holding that the State Farm policy provision was valid and enforceable, the appellant's argument that State Farm breached a duty of good faith in handling her claim (i.e., Count II of her complaint) is rendered moot.

JUDGMENT AFFIRMED;

COSTS TO BE PAID BY THE APPELLANT.