MUCI v STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY

Docket No. 251438. Submitted April 13, 2005, at Detroit. Decided July
21, 2005, at 9:00 a.m. Leave to appeal sought.

Anila Muci brought an action in the Wayne Circuit Court against
State Farm Mutual Automobile Insurance Company, seeking per-
sonal protection insurance (PPI) benefits under the no-fault
automobile insurance act, MCL 500.3101 *et seq.* The defendant
filed a motion to compel the plaintiff to submit to medical
examinations under MCL 500.3151. The plaintiff argued that
MCR 2.311 allowed the court to impose reasonable conditions on
the medical examinations. The court, Robert L. Ziolkowski, J.,
allowed the medical examinations, but imposed several conditions
under MCR 2.311, including allowing the plaintiff's counsel to be
present at the examinations, allowing them to be videotaped, and
precluding the plaintiff from giving the defendant's examiners an
oral account of the accident or her medical history. The defendant
appealed by leave granted.

The Court of Appeals *held*:

1. MCL 500.3151 provides that a person claiming PPI benefits
shall submit to a medical examination if the person's condition is
material to the claim. The claimant is obligated under MCL
500.3142(2) to provide reasonable proof of the fact and the amount
of loss sustained. Contract language in a policy that is neither
ambiguous nor contrary to the no-fault act must be enforced as
written. A contractual discovery device, such as that at issue in
this case, is precluded only if it clashes with the rules that the
Legislature has established for mandatory insurance policies. MCL
500.3151 authorizes an insurer to include in a policy reasonable
provisions for a medical examination. The provision at issue,
allowing the defendant to require a claimant to submit to medical
examinations by physicians when the defendant chooses, as often
as the defendant reasonably requires, is permitted under the
statute.

2. The trial court did not err by applying MCR 2.311, however.
The statutory right to include a reasonable provision in an
insurance policy regarding medical examinations does not give the

parties a right to determine how to proceed with discovery in a civil action. MCL 500.3159 gives the trial court authority to issue a discovery order, and MCR 2.311 is consistent with that statute. The trial court correctly treated the defendant's motion as one for a discovery device subject to MCR 2.311.

3. The defendant waived its challenge to the condition that allows the plaintiff's counsel to be present at the examinations and the condition that allows the examinations to be videotaped by agreeing to those conditions if MCR 2.311 applied. With regard to the conditions that the plaintiff need not give an oral history of the accident or her medical history not related to the "areas of injuries" claimed in the lawsuit, a trial court may limit discovery to relevant issues. These conditions do not preclude the defendant from obtaining information regarding the accident, the plaintiff's medical records, and the plaintiff's medical history related to the "areas of injuries" claimed. The defendant has not explained why the condition concerning medical history constitutes an abuse of the trial court's discretion.

Affirmed.

SAAD, P.J., dissenting, would hold that the Legislature made the obligation to submit to an examination under MCL 500.3151 unambiguous and mandatory. The no-fault act should govern a no-fault insurer's statutory right to have a claimant submit to a medical examination. The insurer is statutorily permitted to make reasonable provisions for those examinations. MCR 2.311 should not be used preemptively to circumvent the Legislature's statutory scheme, and the trial court should not impose conditions that the Legislature chose not to impose. Other remedies exist under the no-fault act if an insurer refuses to pay PPI benefits after reasonable proof of loss is submitted.

INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE BENEFITS — MEDICAL EXAMINATIONS.

The provision of the no-fault automobile insurance act that requires a person claiming personal protection insurance benefits to submit to a medical examination authorizes an insurer to include in a no-fault insurance policy reasonable provisions for a medical examination, including a requirement that the claimant submit to a medical examination by a physician of the insurer's choosing; the right to include such a discovery provision in a policy does not give the parties the right to determine how to proceed with discovery, and the trial court has the discretion to impose conditions on the medical examination (MCL 500.3151; MCR 2.311).

*Buckfire & Buckfire, P.C.* (by *Daniel L. Buckfire* and *Thomas N. Economy*), for the plaintiff.

*Hewson & Van Hellemont, P.C.* (by *James F. Hewson*), and *Gross, Nemeth & Silverman, P.L.C.* (by *James G. Gross*), for the defendant.

Amicus Curiae:

*Siemion, Huckaby, Bodary, Padilla, Morganti & Bowerman, P.C.* (by *Raymond W. Morganti*), for Michigan Defense Trial Counsel.

Before: SAAD, P.J., and FITZGERALD and SMOLENSKI, JJ.

FITZGERALD, J. In this action under the Michigan no-fault automobile insurance act, MCL 500.3101 *et seq.*, plaintiff's no-fault insurer, defendant State Farm Mutual Automobile Insurance Company, appeals by leave granted the order granting defendant's motion for a medical examination of plaintiff, subject to several conditions, pursuant to MCR 2.311.[1] We affirm.

### FACTS AND PROCEDURAL HISTORY

Plaintiff was involved in a motor vehicle accident on May 15, 2002. Defendant initially paid personal injury protection (PIP) benefits to plaintiff, but subsequently refused to pay benefits. Plaintiff filed the present action on February 11, 2003, alleging that defendant "unreasonably refused" to pay PIP benefits to which she is entitled under the no-fault act, notwithstanding that "reasonable proof has been submitted." In its affirmative defenses, defendant stated in part that plaintiff "is not presently entitled to any no-fault benefits as she has failed to supply the Defendant with reasonable proof of

---

[1] The trial court denied defendant's motion for rehearing.

her claims and proof of the fact and amount of the loss sustained as required under the Michigan No-Fault Act, MCL 500.3142(1)."[2]

On July 10, 2003, defendant filed a motion to compel independent medical examinations pursuant to MCL 500.3151 of the no-fault act. Defendant alleged that it had "made many attempts to schedule the Plaintiff to undergo medical examinations, but the Plaintiff declined unless the Defendant agreed to enter into a Stipulation with numerous limitations that are contrary to the pertinent provisions of the Michigan No-Fault Act and prejudicial to the Defendant's ability to investigate the Plaintiff's claims."[3] Defendant claimed that it had a statutory right under MCL 500.3151 to examine plaintiff and that the no-fault act did not authorize the imposition of conditions on the medical examinations. Plaintiff responded by arguing that MCR 2.311 allows the trial court to impose conditions on medical examinations and that the conditions plaintiff sought to impose were reasonable and did not prejudice defendant.

The trial court allowed the medical examinations, but imposed several conditions, citing MCR 2.311. Of import to this appeal are the conditions that allow plaintiff's counsel to be present at the examinations, allow videotaping of the examinations, and preclude plaintiff from giving defendant's examiners an oral account of the accident or her medical history.

---

[2] Defendant did not allege in its answer or affirmative defenses that plaintiff refused to submit to an independent medical examination under MCL 500.3151 of the no-fault act.

[3] The accuracy of this allegation is suspect in light of evidence in the lower court record that plaintiff's attorney sent letters to defendant on December 16, 2002, January 10, 2003, and January 22, 2003, requesting defendant to schedule plaintiff for independent medical examinations. The letters make no mention of any conditions to be placed on the independent medical examinations.

I

Defendant argues that MCL 500.3151 gives an insurer a substantive right to examine a claimant and that a court has no authority to impose conditions on the medical examination under MCR 2.311 if the insurer's request is reasonable. This case presents issues regarding statutory interpretation of the Michigan no-fault automobile insurance act. This Court reviews de novo as questions of law issues involving the interpretation and application of a statute or court rule. *People v Phillips,* 468 Mich 583, 587; 663 NW2d 463 (2003). The primary rule of statutory construction is that, where the statutory language is clear and unambiguous, the statute must be applied as written. *Putkamer v Transamerica Ins Corp of America,* 454 Mich 626, 631; 563 NW2d 683 (1997). Similarly, where contract language is neither ambiguous nor contrary to the no-fault statute, the will of the parties, as reflected in their agreement, is to be carried out, and thus the contract is enforced as written. *Cruz v State Farm Mut Automobile Ins Co,* 466 Mich 588, 594; 648 NW2d 591 (2002).

Michigan's no-fault act is designed to regulate the insurance of motor vehicles in this state and the payment of benefits resulting from accidents involving motor vehicles. *Cruz, supra* at 595. PIP benefits are payable as loss accrues. MCL 500.3142(1). The claimant is obligated to provide "reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2); see *Cruz, supra* at 596. In furtherance of the obligation to provide reasonable proof of the fact and of the amount of loss sustained, MCL 500.3151 provides that a claimant shall submit to a medical examination if the claimant's condition is material to a claim for past or future benefits.[4] MCL 500.3151 states:

---

[4] Contrary to the dissent's assertion, no evidence was presented that plaintiff did not have a medical examination before submitting a proof of loss.

When the mental or physical condition of a person is material to a claim that has been or may be made for past or future personal protection insurance benefits, the person shall submit to mental or physical examination by physicians. A personal protection insurer may include reasonable provisions in a personal protection insurance policy for mental and physical examination of persons claiming personal protection insurance benefits.[5]

MCL 500.3151 refers to a "mental or physical examination by physicians," not to an *independent* mental or physical examination by a physician of defendant's choice. The basis of defendant's motion for an *independent* medical examination by a physician of defendant's choice is the following contractual provision in the insurance policy:

The *person* making claim also shall:

a. under the personal protection injury protection . . . coverages:

\*   \*   \*

(2) be examined by physicians chosen and paid by us as often as we reasonably may require.

This type of provision in an insurance policy falls within the ambit of discovery devices that enable an insurer to discover and eliminate fraud. See, generally, *Cruz, supra* at 597-599. Such contractual discovery devices are precluded only when they clash with the

---

[5] There is no language in MCL 500.3151 that supports plaintiff's view that the statute applies only to prelitigation medical examinations. The only stated condition in the first sentence of MCL 500.3151 is that the mental or physical condition of the person be material to the claim for PIP benefits. The second sentence authorizes the insurer to include "reasonable provisions" for the examination when the person claims PIP benefits, but likewise does not indicate that it is dependent on whether litigation commenced.

rules that the Legislature has established for mandatory policies. *Id.* at 598.

In *Cruz, supra* at 598-601, the Court found that a policy that conditioned the payment of PIP benefits on the plaintiff submitting to an examination under oath (EUO) was void as against public policy to the extent that it imposed a greater obligation on the plaintiff than required by the no-fault act. But the inclusion of the EUO in the insurance policy was not itself deemed inappropriate, even though the no-fault act is silent with respect to EUOs. An EUO was characterized as a "prelitigation, complementary process to that allowed by [MCL 500.3159] during litigation." *Cruz, supra* at 601 n 16. The Court did not find MCL 500.3159[6] of the no-fault act controlling with regard to whether the EUO requirement in the insurance policy could be enforced. Rather, the Court explained:

> EUOs, or other discovery methods that the parties have contracted to use, are only precluded when they clash with the rules the Legislature has established for such mandatory insurance policies. However, when used to facilitate the goals of the act and when they are harmonious with the Legislature's no-fault insurance regime, EUOs in the no-fault context should be viewed no differently than in other

---

[6] MCL 500.3159 states:

In a dispute regarding an insurer's right to discovery of facts about an injured person's earnings or about his history, condition, treatment and dates and costs of treatment, a court may enter an order for the discovery. The order may be made only on motion for good cause shown and upon notice to all persons having an interest, and shall specify the time, place, manner, conditions and scope of the discovery. A court, in order to protect against annoyance, embarrassment or oppression, as justice requires, may enter an order refusing discovery or specifying conditions of discovery and may order payments of costs and expenses of the proceeding, including reasonable fees for the appearance of attorneys at the proceedings, as justice requires.

types of policies. In light of this reasoning, we conclude that an EUO that contravenes the requirements of the no-fault act by imposing some greater obligation upon one or another of the parties is, to that extent, invalid. Thus, a no-fault policy that would allow the insurer to avoid its obligation to make prompt payment upon the mere failure to comply with an EUO would run afoul of the statute and accordingly be invalid. However, an EUO provision designed only to ensure that the insurer is provided with information relating to proof of the fact and of the amount of the loss sustained—i.e., the statutorily required information on the part of the insured—would not run afoul of the statute. [*Cruz, supra* at 598.]

The present case also involves a provision in an insurance policy that provides a discovery device to evaluate plaintiff's claim. Defendant did not establish any substantive right under MCL 500.3151 to have a physician of its choice examine plaintiff. Defendant established only a contractual right that can be upheld if it does not contravene the no-fault act. Because MCL 500.3151 authorizes the insurer to include "reasonable provisions" for a medical examination of persons claiming PIP benefits, the touchstone for upholding the provision is one of reasonableness.

No Michigan case addresses what constitutes a reasonable provision. But in *Cruz, supra* at 600 n 15, the Court approved the reasoning in *Morris v Aetna Life Ins Co,* 160 Ga App 484; 287 SE2d 388 (1981). In *Morris,* an insured brought suit against the insurer for failure to timely pay benefits under Georgia's no-fault insurance law. The insurer delayed payment because the insured refused to submit to an independent medical examination and the insurance policy gave the insurer a right to request a medical examination as part of its investigation of the claim. The Georgia Court of Appeals held that the contractual right to request the medical examination was valid, notwithstanding the lack of statutory

authorization for the medical examination, because it was reasonable and, accordingly, did not limit the insured's right to collect a valid claim or violate either the public policy or Georgia's no-fault act. *Id.* at 485.

In a later case, the Maryland Court of Special Appeals addressed an insured's claim, against the same defendant as in this case, that a similar contractual provision that allowed defendant to require a person making a claim to be " 'examined by physicians chosen and paid by [State Farm] as often as [it] reasonably may require' " was invalid under the state's no-fault law. *Huntt v State Farm Mut Automobile Ins Co,* 72 Md App 189, 191; 527 A2d 1333 (1987). In *Huntt,* defendant had reimbursed the insured for medical expenses until October 1985, when it advised the insured that it would not pay any further benefits unless she submitted to a medical examination by a physician that it selected. The insured's benefits ended after she refused to submit to the medical examination. The insured then filed suit against defendant, arguing in part that Maryland's PIP statute did not require an insured to submit to an examination by a physician chosen and paid for by the insurer. The Maryland court held:

> The statutory language requiring construction in this case is found in Md. Code, *supra,* Art. 48A, § 544(a), which provides in part: "All payments of benefits prescribed under § 539 shall be made periodically as the claims therefor arise and within 30 days after *satisfactory proof* thereof is received by the insurer. . . ." (Emphasis supplied). . . . Section 539(a) permits an insurer providing loss of income benefits to require, as a condition of receiving such benefits, "that the injured person furnish the insurer reasonable medical proof of his injury causing loss of income." Section 544(a)(2) permits an insurer to require "reasonable medical proof" when an injured person who received benefits under the coverage(s) described in § 539

seeks additional benefits after a lapse in the period of
disability or in medical treatment. . . .

\* \* \*

. . . While § 539 was enacted in order to assure prompt
payment of PIP benefits without regard to fault, this does
not mean that PIP coverage was intended to provide a PIP
claimant with a blank check. Maryland's no-fault statute,
like those of other states, places a control on inflated or
spurious claims by limiting the insurer's obligation to
payment of "reasonable" expenses for "necessary" services
arising from the accident in question. 5 M. Minzer, et al.,
*Damages in Tort Actions* § 47.12[2][b] (1987). In our view,
it would be impossible in many cases for an insurer to
determine whether a PIP claimant's expenses were "rea-
sonable" and for "necessary" services if the insurer could
not require that the claimant be examined by a physician of
its choice. Therefore, we hold that a policy provision
permitting an insurer to require that a PIP claimant
submit to a physical examination as a condition precedent
to payment of benefits is consistent with the statutory
mandate in § 544(a) that payment shall be made after the
insurer receives "satisfactory proof" of the claim. [*Id.* at
192-194.]

We are persuaded by the rationale of these cases and
conclude that a contractual provision allowing defen-
dant to require an insured making a claim to submit to
a medical examination "by physicians chosen and paid
by us as often as we reasonably may require" is permis-
sible within the meaning of MCL 500.3151. The fact
that the contract is silent concerning certain details of
performance means only that a standard of reasonable-
ness should be applied in a manner that would not clash
with Michigan's no-fault act. "[W]here contract lan-
guage is neither ambiguous, nor contrary to the no-
fault statute, the will of the parties, as reflected in their
agreement, is to be carried out . . . ." *Cruz, supra* at 594.
"So long as the essentials [of an agreement] are defined

by the parties themselves, the law supplies the missing details by construction." *Nichols v Seaks,* 296 Mich 154, 159; 295 NW 596 (1941); cf. *Walter Toebe & Co v Dep't of State Highways,* 144 Mich App 21, 31; 373 NW2d 233 (1985) (holding that when a written contract is silent regarding the time of performance, a reasonable time is presumed without reference to parol evidence, and what constitutes a reasonable time under the circumstances is a question of fact).

Our conclusion does not validate defendant's claim that the trial court erred by applying MCR 2.311. The Legislature clearly has authorized reasonable provisions for medical examinations in insurance policies. MCL 500.3151. The right to include such reasonable provisions in an insurance policy is a substantive right. But the right created by the statute plainly is not intended to give the parties a right to determine how to proceed with discovery in a civil action. To the contrary, the Legislature has expressed a plain intent in MCL 500.3159 to give the trial court authority to issue a discovery order. MCR 2.311 is consistent with MCL 500.3159:

> When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental or blood examination by a physician (or other appropriate professional) or to produce for examination the person in the party's custody or legal control. The order may be entered only on motion for good cause with notice to the person to be examined and to all parties. The order must specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made, and may provide that the attorney for the person to be examined may be present at the examination. [MCR 2.311(A).]

Because the discovery rule in MCR 2.311 and the contract rights authorized by MCL 500.3151 do not conflict, we reject defendant's claim that MCL 500.3151 alone is controlling. It is only where there is an inherent conflict between a statute and a court rule that a court is required to decide if a statute is a legislative attempt to supplant our Supreme Court's authority to control practice and procedure in the courts. *McDougall v Schanz*, 461 Mich 15, 24; 597 NW2d 148 (1999).[7] In the context of plaintiff's cause of action, the trial court correctly treated the motion as one for a discovery device subject to MCR 2.311.

II

Defendant argues that even if MCR 2.311 allowed the trial court to impose conditions on the independent medical examinations, plaintiff did not show good cause (1) to allow plaintiff's counsel to be present at the examinations, (2) to allow videotaping of the examinations, and (3) to preclude plaintiff from giving defendant's examiners an oral account of the accident or her medical history.

With regard to the first two conditions, defendant waived any challenge to the conditions because its attorney agreed to these conditions if the court rule applied. Error requiring reversal must be that of the

[7] Moreover, we note that defendant has not shown that it properly presented any contract claim in the trial court. Neither defendant's answer to the complaint nor its affirmative defenses raise this contract issue. Rather, it was raised only by motion. Defendant cites no authority for the proposition that an insurer can enforce a contract right by motion in a no-fault action brought by the insured in which the insured alleges that the insurer breached the insurance policy for a reason that does not involve any request to submit to a medical evaluation. Defendant cannot circumvent contract principles by bringing a contract action in the form of a motion under MCL 500.3151.

trial court, and not error to which an aggrieved party contributed by plan or negligence. *Phinney v Perlmutter,* 222 Mich App 513, 537; 564 NW2d 532 (1997). A party waives an issue by affirmatively approving of a trial court's action. *People v Carter,* 462 Mich 206, 215-216; 612 NW2d 144 (2000).[8]

With regard to the third condition, defendant challenges paragraphs 14 and 15 of the trial court's order, which provide:

> 14. That Plaintiff will not be required to give any oral history of the accident.
>
> 15. That Plaintiff will not be required to give any oral medical history not related to the areas of injuries claimed in this lawsuit.

This Court reviews a trial court's decision with regard to a discovery order for an abuse of discretion. *Shinkle v Shinkle (On Rehearing),* 255 Mich App 221, 224; 663 NW2d 481 (2002).

A trial court may limit discovery to relevant issues. See *Bloomfield Charter Twp v Oakland Co Clerk,* 253 Mich App 1, 35-36; 654 NW2d 610 (2002). At the time of defendant's motion for the medical examinations, defendant's attorney argued that an oral history would assist the examiner to form an opinion whether any injuries were presented and related to the accident. The injuries in this case were broadly characterized as involving closed-head and psychiatric injuries. Plaintiff's attorney expressed concern that defendant's ex

---

[8] Although defendant, through new counsel, later challenged the trial court's decision in a motion for rehearing, defendant's appellate brief fails to address the standards for rehearings. Defendant's failure to brief this necessary issue precludes appellate review. *Roberts & Son Contracting, Inc v North Oakland Dev Corp,* 163 Mich App 109, 113; 413 NW2d 744 (1987).

aminer would conduct a de facto deposition. The trial court provided in condition 14 that "[p]laintiff will not be required to give any oral *history of the accident*," and pronounced that the court considered impermissible under condition 14 questioning such as "who ran the red light, who ran the stop sign," and "who had the right-of-way . . . ." By its inclusion of condition 14, the court recognized that defendant, through the normal course of discovery, could obtain information regarding the accident itself.[9] Contrary to defendant's argument, there is nothing in condition 14 that suggests that the condition would preclude inquiries into plaintiff's mental or physical condition at the time of the accident, how the injuries occurred, or such matters as whether plaintiff suffered a memory loss in conjunction with the closed-head injury.

The final condition, number 15, does not preclude plaintiff from giving an oral medical history related to the "areas of injuries" claimed in the lawsuit. Although the "areas of injuries" might be difficult to analyze when a psychiatric injury is in controversy, defendant has not explained why the stated condition constitutes an abuse of discretion. To the extent that defendant suggests that the examiner would be totally precluded from orally asking plaintiff about her medical history, the language in condition 15 does not support this claim. Defendant has failed to establish that the trial court abused its discretion by including conditions 14 and 15 in the August 25, 2003, order.

Affirmed.

---

[9] Therefore, defendant may obtain plaintiff's version of the accident, and her medical history, through means such as interrogatories or deposition. Further, defendant had access to plaintiff's medical records. Consequently, defendant has not been precluded from obtaining the relevant, necessary information for the examiner.

SMOLENSKI, J., concurred.

SAAD, P.J. *(dissenting).* I respectfully dissent because Michigan's no-fault law should govern a no-fault insurer's statutory right to have a claimant submit to a medical examination. Under the Legislature's comprehensive and detailed framework for medical examinations, an insured must submit to a mental or physical examination required by the insurer as a condition of payment of a claim for benefits, and the insurer is statutorily permitted to make reasonable provisions for such examinations. MCL 500.3151. The insurer's right to this examination does not depend on whether an insured has filed a lawsuit for failure to pay. In other words, regardless of whether litigation has commenced, a claimant remains obligated to submit to a medical examination if the claimant's condition is material to a claim for past or future personal injury protection (PIP) benefits.[1]

Plaintiff refused to submit to an examination required by § 3151 and demanded that the insurer stipulate certain conditions, including, among numerous other requirements, that a third party may be present during the examination, that the examination may be

---

[1] Indeed, under MCL 500.3142(2), the claimant is obligated to provide "reasonable proof of the fact and of the amount of loss sustained." Consistently with this section, the necessity of the medical examination directly relates to whether plaintiff can establish reasonable proof of the fact and amount of loss. Though plaintiff may have undergone examinations by her own doctors, an insurer is entitled under § 3151 to have a claimant submit to an independent medical examination under the reasonable provisions set forth in the insurance agreement. Contrary to the suggestion by the majority in footnote 4 of its opinion, I do not suggest that plaintiff failed to submit to any medical examinations before filing her claim. But the record is clear that plaintiff refused, and continues to refuse, to submit to a § 3151 examination without conditions —conditions that the Legislature chose not to require.

videotaped, and that plaintiff may not give the examining doctor an oral account of the accident or her medical history. When defendant declined to stipulate plaintiff's terms, plaintiff attempted to litigate defendant's statutory right under § 3151 by asking the court to impose her conditions on the insurer pursuant to MCR 2.311. I would hold that MCR 2.311 should not be used preemptively to circumvent our Legislature's extensive statutory scheme for dealing with medical examinations under the no-fault act.

The Legislature made the obligation to submit to a § 3151 examination unambiguous and mandatory by specifically providing that "the person shall submit" to such an examination. Moreover, unlike MCR 2.311, which conditions physical and mental examinations on a showing of *"good cause"* and allows the trial court the discretion to grant and tailor the request, the Legislature chose not to impose such conditions on the right of a no-fault carrier to require a claimant to submit to an examination. Plaintiff takes the untenable position that, if a claimant files suit, an insurer must establish "good cause" for the examination notwithstanding the Legislature's clear intent that the examination is mandatory under § 3151.

Just as the Legislature did not condition an insurer's right to medical examinations on a showing of good cause, the Legislature chose not to impose the kind of conditions required by the trial court here. Rather, the Legislature provided for remedies, as expressed in MCL 500.3153,[2] MCL 500.3142, and MCL 500.3148. In these remedial sections, our Legislature imposes penalties of twelve percent on no-fault insurers for overdue pay-

---

[2] MCL 500.3153 states:

A court may make such orders in regard to the refusal to comply with sections 3151 and 3152 as are just, except that an order shall not be entered directing the arrest of a person for

ments if the insurer refuses to pay benefits after reasonable proof of loss is submitted. And, significantly, in MCL 500.3148, our Legislature grants attorney fees to lawyers who advise and represent PIP claimants who are unreasonably denied benefits, providing that "[t]he attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment." Thus, to the extent a claimant has a grievance or concern that an insurer is abusing the medical examination process simply to delay the payment of benefits, the Legislature provides substantial remedies that also constitute serious disincentives for an insurer to attempt to abuse that process.[3]

---

disobeying an order to submit to a physical or mental examination. The orders that may be made in regard to such a refusal include, but are not limited to:

(a) An order that the mental or physical condition of the disobedient person shall be taken to be established for the purposes of the claim in accordance with the contention of the party obtaining the order.

(b) An order refusing to allow the disobedient person to support or oppose designated claims or defenses, or prohibiting him from introducing evidence of mental or physical condition.

(c) An order rendering judgment by default against the disobedient person as to his entire claim or a designated part of it.

(d) An order requiring the disobedient person to reimburse the insurer for reasonable attorneys' fees and expenses incurred in defense against the claim.

(e) An order requiring delivery of a report, in conformity with section 3152, on such terms as are just, and if a physician fails or refuses to make the report a court may exclude his testimony offered at trial.

[3] Indeed, in her complaint, plaintiff sought to recover under these specific statutory remedies.

From the foregoing, it is clear that our Legislature dealt comprehensively with both the question of medical examinations for PIP claimants and the appropriate penalties for an insurer's unreasonable refusal to pay benefits. Therefore, if a no-fault carrier abuses its right under § 3151, a trial court should use no-fault law and apply the remedies available in §§ 3153, 3142 and 3148 rather than use MCR 2.311 to impose conditions for the taking of such examinations—conditions our Legislature chose not to impose.[4] In this manner, our courts can both honor the Legislature's role in creating rights and remedies for PIP benefits under Michigan's no-fault automobile insurance law and protect a claimant's right to PIP benefits.

---

[4] Indeed, to the contrary, under MCL 500.3151, the Legislature grants the insurer the right to make "reasonable provisions" in the policy for such examinations.