# STATE OF MICHIGAN

# COURT OF APPEALS

MARY STIRNEMANN, Personal Representative
of the Estate of CRANDALL SUTTON,

        Plaintiff-Appellee/Cross-Appellant,

v

WILLIAM BEAUMONT HOSPITAL, ROYAL
OAK SURGICAL ASSOCIATES PC, and
ROBERT JURY,

        Defendants-Appellants/Cross-
        Appellee,

and

KASIF QURESHI, also known as QURESHI
KASIF,

        Defendant.

UNPUBLISHED
December 8, 2015

No. 323832
Oakland Circuit Court
LC No. 2012-126706-NH

Before: MURRAY, P.J., and METER and RIORDAN, JJ.

PER CURIAM.

Defendants, William Beaumont Hospital (Beaumont), Royal Oak Surgical Associates, PC, and Robert Jury,[1] appeal as of right an order entering judgment in favor of plaintiff. Plaintiff[2] cross-appeals an order denying her motion for additur. We affirm in part, and reverse in part, the order entering judgment in favor of plaintiff, and we affirm the trial court's order denying plaintiff's motion for additur.

---

[1] Beaumont, Royal Oak Surgical Associates, PC, and Robert Jury will be referred to as defendants as they are the only relevant defendants to this appeal.

[2] Plaintiff refers to Mary Stirnemann, the decedent's personal representative.

-1-

## I. FACTUAL BACKGROUND

This appeal arises out of the death of Crandall Sutton (Crandall). When Crandall was 81 years old, he suffered from a sore right knee and decided to have knee replacement surgery. Prior to undergoing knee replacement surgery, Crandall was cleared to have the surgery by his cardiologist and his internal medicine physician, despite having atrial fibrillation, tachyarrhythmia, and hypertension. On March 18, 2009, Crandall had a successful knee replacement surgery.

After surgery, Crandall was discharged from Beaumont and went to Heartland Rehabilitation Facility on March 21, 2009. The following day, Crandall began experiencing difficulty in breathing, abdominal pain, abdominal distension, nausea, and vomiting. As a result, Crandall went to the emergency room at Beaumont on March 23, 2009.

Dr. Kasif Qureshi was the admitting physician. Robert Jury, a general surgeon at Royal Oak Surgical Associates, provided a general surgery consultation upon Crandall's admission to the emergency room at Beaumont. Crandall was diagnosed with postoperative ileus, which involves "the lack of motility of the bowel." Dr. Jury recommended bowel rest and IV fluids and examined Crandall every day and assisted with Crandall's care from March 23, 2009 to March 28, 2009. Rina Shah, a physician's assistant under the supervision of Dr. Jury, also assisted in the care of Crandall. On March 28, 2009, Crandall died as a result of multisystem organ failure.

Plaintiff later filed the instant medical malpractice action, alleging that Crandall suffered injury resulting from a breach of the applicable standard of care by defendants during Crandall's postsurgical care.[3] Relevant to this appeal, plaintiff alleged that Jury was negligent for failing to properly treat Crandall's postoperative ileus. Specifically, plaintiff claimed that Jury should have either scheduled or performed a decompressive colonoscopy, or given the drug Neostigmine to Crandall to treat the postoperative ileus.

At trial, plaintiff's medical expert, Leonard Francis Milewski opined Crandall suffered from a specific type of ileus, Ogilvie's Syndrome. Ogilvie's is a type of ileus that affects the colon. The signs and symptoms of Ogilvie's include a distended abdomen, abdominal pain, nausea, and vomiting. Evidence was presented that when Ogilvie's is left untreated, the colon is filled with air and gas and it continues to enlarge. The method of treatment for Ogilvie's is to decompress the colon. In order to decompress the colon, a general surgeon would order a decompressive colonoscopy or provide the medication Neostigmine. Milewski opined that it was a breach of the standard of care for failing to decompress the colon on March 26. Milewski opined that a decompressive colonoscopy or Neostigmine would have prevented Crandall's death, and that Jury breached the standard of care by continuing only conservative measures, i.e., bowel rest and IV fluids, while caring for Crandall. Milewski testified that Crandall had a remaining life expectancy of 7.6 years had he not died.

---

[3] Dr. Querishi was subsequently dismissed from the lawsuit.

On the other hand, defendants maintained that Jury adhered to the applicable standard of care when providing postsurgical care to Crandall. Specifically, Jury opined that he adhered to the standard of care and did not give Crandall Neostigmine because he had a history of cardiac arrhythmia and Neostigmine could cause cardiac arrest. Jury believed that giving Crandall Neostigmine would have been "dangerous." This opinion was bolstered by Scott Dulchavsky, defendant's expert witness, who also opined that Jury would have breached the standard of care if he gave Crandall Neostigmine because the drug can be dangerous to patients with cardiac issues.

Dr. Jury also testified that performing a decompressive colonoscopy would have required giving Crandall sedatives, which would have put Crandall at risk of needing ventilator support. Dulchavsky opined that performing a decompressive colonoscopy would have been a "relatively high-risk procedure."

Along with maintaining that Jury was not professionally negligent, defendants maintained that his conduct was not the cause of Crandall's death. According to Jury and Dulchavsky, there were a "number of medical issues" that were "complicating, contributing factors" to Crandall's death. Dr. Jury believed that Crandall died as a result of an infection in the knee or from bronchopneumonia. Dulchavsky, along with another expert Timothy Nostrant, opined that a decompressive colonoscopy or Neostigmine would not have saved Crandall's life.

After the close of proofs, closing arguments, and jury instructions, the jury rendered a verdict in plaintiff's favor. The jury awarded plaintiff $22,000 for past economic damages for medical and funeral expenses, and awarded $11,000 per year for eight years for loss of financial support. With regard to noneconomic damages, the jury awarded $15,000 for loss of companionship for the year of 2014, but did not award any damages for loss of companionship for any other year. The jury did not award plaintiff any damages for pain and suffering.

After trial, plaintiff filed a motion for additur, arguing that the damages awarded were inadequate and against the great weight of the evidence. In opposition, defendants argued that the trial court defer to the judgment of the jury regarding damages. After listening to arguments, the trial court stated that it would not rewrite the jury verdict and subsequently entered an order denying plaintiff's motion for additur.

Before entering judgment in favor of plaintiff, the trial court held a collateral source hearing, pursuant to MCL 600.6303, to determine if any of plaintiff's economic damages were paid or payable by a collateral source. At the hearing, defendants argued that plaintiff acknowledged in her answer to interrogatories that all economic losses were payable or had been paid by a collateral source. However, plaintiff argued that the trial testimony established that prior to Crandall's death, the Sutton family's household income was $39,000, and after his death, the household income decreased to $28,000. Ultimately, the trial court found that plaintiff had suffered $11,000 in economic loss in the years following Crandall's death and that the amount was not paid or payable by a collateral source, so it entered an order denying defendants' request to reduce the jury award. This appeal ensued.

## II. DEFENDANTS' APPEAL

-3-

## A.  ADMISSIBILITY OF RENA SHAH'S DEPOSITION

### 1.  HEARSAY

Defendants argue that the trial court abused its discretion by excluding the deposition of Rana Shah on the basis that she was not available pursuant to the Michigan Rules of Evidence governing hearsay.  We conclude that defendants have waived this issue.

"A party waives an issue by affirmatively approving of a trial court's action."  *Muci v State Farm Mut Auto Ins Co*, 267 Mich App 431, 443; 705 NW2d 151 (2005), rev'd on other grounds 478 Mich 178 (2007).  Moreover, a litigant may not harbor error, to which he or she consented, as an appellate parachute.  *Clohset v No Name Corp (On Remand),* 302 Mich App 550, 567; 840 NW2d 375 (2013).

At trial, defendants attempted to admit into evidence the deposition of Rena Shah, who had since moved to Minnesota.  Plaintiff objected on the basis that Shah's deposition was inadmissible hearsay.  In response to plaintiff's hearsay objection, defendants contended that the Shah deposition was admissible because the rules of evidence specifically permit deposition testimony when a witness is not available.  Ultimately, the trial court held that the deposition testimony was inadmissible hearsay because defendant was unable to establish that Shah was unavailable pursuant to MRE 804(a).  After the trial court made its ruling, the trial court provided defendant an opportunity to review the Michigan Rules of Evidence.  After the short recess, defendants' attorney stated, "I apologize, Judge, I can't prove unavailability according to the Rules.  Plain and simple.  And so, I apologize, I'm sorry I got excited about it, but I can't - - per that I can't do it.  All I can say is what happened."  Given that defendants acknowledged that they were unable to prove that Shah was unavailable and approved the trial court's ruling that the deposition was inadmissible hearsay, defendants cannot now complain about the admissibility of the deposition under the hearsay rules as their own unequivocal conduct waived this right.  *Marshall Lasser, PC v George*, 252 Mich App 104, 109; 651 NW2d 158 (2002).  Because defendants waived this issue, the waiver eliminated any error and appellate review is precluded.  *The Cadle Co v City of Kentwood*, 285 Mich App 240, 255; 776 NW2d 145 (2009).

### 2.  RULE OF COMPLETENESS

Defendants also argue, for the first time on appeal, that they were entitled to admit the entirety of Shah's deposition pursuant to MRE 106.  This unpreserved claim of error is reviewed for plain error affecting substantial rights.  *Lima Twp v Bateson*, 302 Mich App 483, 503; 838 NW2d 898 (2013).  To satisfy the plain error test, (1) error must have occurred, (2) the error must be plain, i.e., clear or obvious, and (3) the plain error affected substantial rights.  *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000).

The "rule of completeness" is contained in MRE 106, which provides:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

Defendants' principal contention is that the rule of completeness required the admission of Shah's deposition testimony to provide clarification to Shah's medical notes plaintiff admitted at trial. However, defendants have not established that fairness required Shah's deposition to be considered contemporaneously with her medical notes as Shah's medical notes were complete without the introduction of her deposition testimony. While Shah's deposition testimony may have explained her medical notes, her medical notes were not incomplete and spoke for themselves. Furthermore, although plaintiff questioned many of the witnesses regarding Shah's medical notes that were admitted into evidence, no portion of Shah's deposition was admitted at trial or read into the record before the jury. As a result, defendants were not entitled to request that plaintiff introduce any other part of the deposition testimony. MRE 106. As such, no error occurred.

## B. SUPPLEMENTAL JURY INSTRUCTION

Defendants next argue that reversal is required as the trial court gave an erroneous supplemental jury instruction. A trial court's determination with regard to a supplemental jury instruction is reviewed for an abuse of discretion and this Court "will not reverse a trial court's decision regarding supplemental instructions unless failure to vacate the verdict would be inconsistent with substantial justice." *Guerrerro v Smith*, 280 Mich App 647, 660; 761 NW2d 723 (2008), quoting *Grow v W A Thomas Co*, 236 Mich App 696, 702; 601 NW2d 426 (1999).

Jury instructions are reviewed in their entirety and "[e]ven if somewhat imperfect, instructions do not create error requiring reversal if, on balance, the theories of the parties and the applicable law are adequately and fairly presented to the jury." *Case v Consumers Power Co.*, 463 Mich 1, 6; 615 NW2d 17 (2000). "When the standard jury instructions do not adequately cover an area, the trial court is obligated to give additional instructions when requested if the supplemental instructions properly inform the jury of the applicable law and are supported by the evidence." *Stoddard v Manufacturers Nat'l Bank of Grand Rapids*, 234 Mich App 140, 162; 593 NW2d 630 (1999). A supplemental jury instruction, which is to be modeled as nearly as practicable after the standard jury instructions, "must be concise, understandable, conversational, unslanted, and nonargumentative." *Id*. at 163. Reversal is warranted where instructional error resulted in such unfair prejudice to the complaining party that the failure to vacate the jury verdict would be inconsistent with substantial justice. *Case*, 463 Mich at 6.

To establish a cause of action for medical malpractice, a plaintiff must prove that the defendant's breach of the applicable standard of care proximately caused the plaintiff's injuries. *Lockridge v Oakwood Hosp*, 285 Mich App 678, 684; 777 NW2d 511 (2009). The disputed instruction in this case was intended to aid the jury in determining whether plaintiff's injuries were the proximate result of the defendant's breach of the applicable standard of care.

After the close of proofs, the trial court instructed the jury, in relevant part:

When I use the words "proximate cause," I mean first that the negligent conduct must have been a cause of Plaintiff's injuries and second, that the plaintiff's injuries must have been a type that is a natural and probable result of the negligent conduct. There may be more than one proximate cause. To be a proximate cause, the claimed negligence need not be the only cause nor the last cause. A cause

may be proximate, although it and other cause – it and another cause act at the same time or in a combination to produce the occurrence.

\* \* \*

The Plaintiff has the burden of proof on each of the following: First, that the Defendant was professionally negligent in one or more of the ways claimed by the Plaintiff as stated in these instructions. Two, that the plaintiff has sustained injuries and damages. There, that the professional negligence or malpractice of the Defendant was the proximate cause of the injury and damages to the Plaintiff. Your verdict will be for the Plaintiff if the Defendant was negligent and such negligence was a proximate cause to the Plaintiff's injuries and if there were damages. Your verdict will be for the Defendant if the Defendant was not professionally negligent or did not commit malpractice, or if the Defendant was professionally negligent or did commit malpractice, but such professional negligence or malpractice was not a proximate cause of the Plaintiff's injuries or damages, or if the Plaintiff was not injured or damaged.

The following day, after the trial court read the deadlocked jury instruction and suggested that the jury list the issues that "divide or confuse" them, the jury wrote a note to the trial court that provided, "We are unable to -- we are unable to decide on question number 3 [on the verdict form]." Question 3 on the verdict form stated, "Was the defendants' professional negligence a proximate cause of injury and/or damages to Crandell [sic] Sutton and/or his surviving family members?"

After receiving the note from the jury, the trial court subsequently instructed the jury:

And I'm going to instruct you that in order for the Plaintiff to establish the requisite proximate causation in this medical malpractice action, she must show specific facts that would support a reasonable inference of a logical sequence of cause and effect. The evidence need not negate all other causes, but the evidence must convince you by a preponderance of the evidence that Dr. Jury's negligent conduct was a cause of Mr. Sutton's death, and that Mr. Sutton's death was a natural and probable result of Dr. Jury's negligent conduct.

Having reviewed the jury instructions, the trial court's instructions concerning proximate cause were adequate. The supplemental jury instruction required plaintiff to prove by a preponderance of the evidence that Robert Jury's conduct was a cause of Crandall's death, that plaintiff was required to set forth facts that would support a reasonable inference of a logical sequence of cause and effect, and that Robert Jury's conduct was a natural and probable result of Robert Jury's negligent conduct, all in accordance with applicable law. See *Craig v Oakwood Hosp*, 471 Mich 67, 87; 684 NW2d 296 (2004) (stating "a plaintiff establishes that the defendant's conduct was a cause in fact of his injuries only if he sets forth specific facts that would support a reasonable inference of a logical sequence of cause and effect.") (citation and quotation marks omitted); *Lockridge*, 285 Mich App at 689 (holding a plaintiff must prove that the plaintiff's damages and injuries are a natural and probable result of a defendant's negligence.). While the trial court's supplemental instruction did not contain the phrase "but the

evidence must exclude other reasonable hypotheses with a fair amount of certainty," the trial court's supplemental instruction was responsive to the jury's request; was concise, understandable, conversational, unslanted, and nonargumentative; and defendants suffered little prejudice from the phrase being omitted because the trial court nevertheless instructed the jury that plaintiff was required to prove proximate cause by the preponderance of the evidence by showing specific facts that would support a reasonable inference of a logical sequence of cause and effect. The court adequately instructed the jury to protect against the possibility that the verdict was rendered upon a mere possibility or plausible explanation of causation. See *Craig*, 471 Mich at 87.

Defendants' main contention is that the supplemental jury instruction "cannot be considered unslanted" because it interfered with the jury's role in determining whether Dr. Jury was professionally negligent. Despite defendants' contention, neither the jury verdict form nor the trial court's instructions indicated that the jury was required to find that Dr. Jury was negligent. More importantly, the record shows that the jury was past the question of Dr. Jury's negligence at the time they considered the supplemental instruction. In fact, Question 1 on the jury verdict form specifically asked, "Was the defendant, Robert Jury, M.D., professionally negligent?" The verdict form then instructed the jury not to answer subsequent questions if it responded negatively to Question 1. Because jurors are presumed to follow their instructions, *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 302 Mich App 7, 25; 837 NW2d 686 (2013), the jury would have already determined that Robert Jury was professionally negligent because the jury had proceeded to Question 3. Thus, the jury instruction did not interfere with the jury's role in determining whether Dr. Jury was professionally negligent, as that determination was already made by the jury at the time the trial court provided the jury with the supplemental instruction. After reviewing the jury instructions in their entirety, we discern no error demanding relief.

## C. COLLATERAL SOURCE RULE

Defendants also challenge the trial court's factual findings concerning economic expenses that were paid or payable by a collateral source. We review a trial court's findings of fact for clear error. *Chapdelaine v Sochocki*, 247 Mich App 167, 169; 635 NW2d 339 (2001). "Clear error exists where, after a review of the record, the reviewing court is left with a firm and definite conviction that a mistake has been made." *Marshall Lasser, PC*, 252 Mich App at 110. A trial court's interpretation and application of the collateral source rule, as set forth in MCL 600.6303, is reviewed de novo. *Shivers v Schmiege*, 285 Mich App 636, 653; 776 NW2d 669 (2009). MCL 600.6303 provides, in relevant part:

> In a personal injury action in which the plaintiff seeks to recover for the expense of medical care, rehabilitation services, loss of earnings, loss of earning capacity, or other economic loss, evidence to establish that the expense or loss was paid or is payable, in whole or in part, by a collateral source shall be admissible to the court in which the action was brought after a verdict for the plaintiff and before a judgment is entered on the verdict. Subject to subsection (5), if the court determines that all or part of the plaintiff's expense or loss has been paid or is payable by a collateral source, the court shall reduce that portion of the judgment which represents damages paid or payable by a collateral source by an amount equal to the sum determined pursuant to subsection (2).

"Collateral source" means benefits received or receivable from an insurance policy; benefits payable pursuant to a contract with a health care corporation, dental care corporation, or health maintenance organization; employee benefits; social security benefits; worker's compensation benefits; or Medicare benefits. MCL 600.6303(4).

The trial court clearly erred in finding that plaintiff had economic damages not paid or payable by a collateral source. Attached to defendants' request for a collateral source hearing was plaintiff's answer to interrogatories. Plaintiff's interrogatory answers state, in relevant part:

> 30. Do you admit that the amount claimed by you for lost income, lost wages, or lost earning, medical bills, hospital expenses or any other amounts claimed as out-of-pocket expenses have been paid or are payable by a collateral source such as benefits received or receivable from an insurance policy, healthcare corporation, dental care corporation, health maintenance organization, employee benefits, social security benefits, worker's compensation and/or Medicare benefits?
>
> **ANSWER: YES**
>
> 31. If your answer to the preceding interrogatory is in the negative, please identify with specificity the exact amount of the lost income, lost wages or lost earning, medical expenses, hospital bills to date which were not paid or are not payable by a collateral source and state with specificity the exact nature of your computation to reach that figure if any. (See MCLA 600.6303).
>
> **ANSWER: Not applicable.**

At the collateral source hearing, plaintiff argued that the trial testimony demonstrated that plaintiff suffered an $11,000 loss in financial support per year upon Crandall's death. Further, plaintiff submitted social security and pensions statements to the trial court to substantiate the amount of loss in financial support for the years after Crandall's death and to demonstrate that plaintiff's economic loss was not paid or payable by social security or Crandall's pension. Although plaintiff presented evidence that the economic loss was not paid or payable by social security or Crandall's pension (employee benefits), plaintiff still failed to present evidence that the economic loss was not paid or payable by any other of the collateral sources set forth in MCL 600.6303(4), which was required to rebut her admission in her interrogatory answer. See *Bachus v West Traverse Twp (On Remand)*, 122 Mich App 557, 559-562; 332 NW2d 535 (1983) (holding that the trial court clearly erred in its factual findings when a party did not rebut the admission contained in their answer to interrogatories at an evidentiary hearing). Therefore, the trial court clearly erred in finding, on this record, that plaintiff had economic damages that were not paid or payable by a collateral source. *Id.* Because plaintiff stated in her answers to interrogatories that *all* economic damages were paid or payable by a collateral source, the trial court, on remand, shall reduce that portion of the judgment which represents damages paid or payable by a collateral source. MCL 600.6303.

### III. PLAINTIFF'S APPEAL

Plaintiff argues that the trial court abused its discretion when it denied plaintiff's motion for additur. Specifically, plaintiff argues that the jury's award for loss of companionship is inadequate and against the great weight of the evidence. "This Court reviews a trial court's decision on a motion for additur or a new trial for [an] abuse of discretion." *Taylor v Kent Radiology, PC*, 286 Mich App 490, 524; 780 NW2d 900 (2009). A court abuses its discretion when its decision falls outside the range of principled outcomes. *Pontiac Fire Fighters Union Local 376 v City of Pontiac*, 482 Mich 1, 8; 753 NW2d 595 (2008).

A motion for new trial is supportable when, the verdict was "clearly or grossly inadequate or excessive," or the verdict was against the great weight of the evidence. See MCR 2.611(A)(1)(d) and (e). The party asserting a claim has the burden of proving damages with reasonable certainty. *Berrios v Miles, Inc*, 226 Mich App 470, 478; 574 NW2d 677 (1997). This Court will defer to the judgment of the jury with regard to the weight to be accorded to the evidence concerning damages and "the jury is free to credit or discredit any testimony." *Taylor*, 286 Mich App at 525.

At trial, plaintiff presented testimony concerning noneconomic loss. With regard to loss of companionship, evidence was presented that Crandall was very involved in his children and grandchildren's lives. Crandall's daughters, plaintiff and Linda Kuhn, along with Crandall's wife, Carrie Sutton (Carrie), engaged in a variety of activities with Crandall prior to his death. Further, evidence was presented that Carrie has been "very lonely" since Crandall's death. Although the testimony at trial could have supported some measure of damages for loss of companionship for the years of 2009 to 2013 and from 2015 to 2016, a reasonable jury could have concluded that plaintiff failed to meet her burden of proof for those time periods. Particularly, the jury could have discredited part of the testimony from plaintiff, Kuhn, and Carrie. *Taylor*, 286 Mich App at 525. Accordingly, we will defer to the judgment of the jury in this regard. *Id*.

Plaintiff also asserts that the jury's verdict was against the great weight of the evidence because the jury failed to award damages for loss of society and companionship for the years ranging from 2009 to 2013 and 2015 to 2016, but awarded damages for loss of financial support for those same years. However, "no legal principle requires the jury to award one item of damages merely because it has awarded another item." *Kelly v Builders Square, Inc*, 465 Mich 29, 39; 632 NW2d 912 (2001). Simply put, the jury was not required to award damages for loss of society and companionship merely as a result of awarding damages for loss of financial support because the jury might have evaluated the evidence on pain and suffering differently from the evidence concerning other proof of damages. *Id*. Therefore, the trial court's denial of plaintiff's motion for additur or a new trial was not outside the range of reasonable and principled outcomes.

## IV. CONCLUSION

For the reasons stated herein, we affirm in part, and reverse in part, the order entering judgment in favor of plaintiff, and we affirm the trial court's order denying plaintiff's motion for

additur.  No costs, as neither party fully prevailed on appeal.  MCR 7.219(A).

/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Michael J. Riordan